[No. 19258. *En Banc.* May 24, 1926.]

FRANK G. MILLER, *Plaintiff and Appellant,* v. ALASKA STEAMSHIP COMPANY, *Defendant and Appellant,* DAN HALLGRIMSON, *Defendant and Respondent.*[1]

[1] ADMIRALTY (3)—JURISDICTION OF STATE COURTS—PERSONAL INJURY TO STEVEDORE. Under the Federal Act relating to admiralty jurisdiction, which saves to suitors all rights to common law remedies where the common law is competent to give it, the state courts have jurisdiction of actions *in personam* for injuries sustained by an employee due to unsafe appliances furnished by the ship owner.

[2] MASTER AND SERVANT (63)—FELLOW-SERVANTS—DELEGATION OF DUTY. The master is not relieved from liability for the negligence of a fellow servant relating to furnishing instrumentalities which it was the non-delegable duty of the master to furnish.

[3] APPEAL (460)—INCONSISTENT INSTRUCTIONS—HARMLESS ERROR. Prejudicial error cannot be assigned upon inconsistent instructions which were submitted upon an immaterial issue and could not possibly operate to the prejudice of the appellant.

[4] SAME (145)—ACTIONS—SUFFICIENCY OF EVIDENCE—DEFECTIVE MACHINERY. Evidence that winches were defective both in construction and because they were not sufficiently flexible for the work makes a question for the jury as to the negligence of the master in furnishing them.

[5] JUDGMENT (59)—TRIAL (134)—EFFECT OF JUDGMENT OR VERDICT AGAINST ONE JOINT TORT FEASOR. Where a master and a co-servant are sued as joint tort feasors, the verdict and judgment exonerating the co-servant does not preclude a verdict and judgment against the master, where its liability rests upon its own negligence in failing to furnish proper instrumentalities.

Cross-appeals from a judgment of the superior court for King county, Hall, J., entered November 29, 1924, upon the verdict of a jury rendered in favor of one, and against the other, defendant, in an action for personal injuries. Affirmed.

[1]Reported in 246 Pac. 296.

*Bogle, Bogle & Holman,* for appellant.

*Wm. Martin* and *H. A. Martin,* for respondent.

FULLERTON, J.—This is an action brought by Frank G. Miller, as plaintiff, against the Alaska Steamship Company and Dan Hallgrimson, as defendants, to recover in damages for personal injuries. The jury by their verdict found in favor of Miller as against the steamship company, and against him as to Hallgrimson. From a judgment entered in accordance with the verdict, both Miller and the steamship company appeal; Miller from that part of the judgment exonerating Hallgrimson, and the steamship company from that part of the judgment adjudging it liable to answer in damages in the sum returned by the jury.

· The plaintiff was injured while an employee of the steamship company, engaged with other of its employees in loading with piles its sea-going vessel known as the Latouche. Briefly, the manner of loading was this: The piles were brought singly alongside the vessel, from whence they were hoisted on board by power furnished by steam winches. The winches were two in number, placed side by side on the deck of the vessel, sufficiently close together so as to be operated by one man. They were operated by means of levers, so placed as to permit the operator to stand between the winches and take a lever in each hand. A line was run from the drum of each of the winches through pulleys and tackles fastened to stays and movable booms, rigged in a manner known as the yard and stay method. By means of power from one of the winches, the pile was hoisted in an upright position on a level with the deck of the vessel. By means of power from the other winch, it was carried over to a hatchway of the vessel, and then by means of power from both of the winches, was lowered into the hold.

The plaintiff was employed as the operator of the winches. One pile was brought on board and safely lowered into the hold. Another was hitched onto and brought to the level of the deck. On its movement across to the hatchway, it caught in some manner in the rigging, became loose from its fastenings and fell to the deck of the vessel. In falling, one end of it struck the plaintiff, severely crushing his foot. The work of loading was under the immediate supervision of Hallgrimson; the plaintiff, as well as all of the others of the employees, being subject to his orders.

The plaintiff sued the defendants as joint tort feasors. In his complaint, he set forth a number of acts of negligence, but as many of these were withdrawn by the trial court from the consideration of the jury, and as the withdrawals involve no question presented by the appeals, no further notice of them need be taken. The principal charge of negligence involving the steamship company, and the one on which the trial court submitted the question of its liability to the jury, was the charge that the winches furnished were defective. The principal charge of negligence which involved the defendant Hallgrimson, and the one on which his liability was submitted to the jury, was that the gearing was improperly rigged, and his refusal, on this defect being called to his attention, to permit a rearrangement of the gear.

The defendants answered jointly. They put in issue the allegations of negligence contained in the complaint, and set up six affirmative defenses. The fourth affirmative defense was a plea going to the jurisdiction of the court. In the fifth defense it was alleged that all of the injuries suffered by the plaintiff were the direct result of the acts and omissions of the plaintiff's fellow servants, for which neither of the defendants was responsible. In the sixth defense, it was alleged

"That any right, claim, cause of action or remedy of the plaintiff for indemnity or damages is governed and controlled by the maritime law and arises under the constitution and laws of the United States."

The affirmative defenses were put in issue by a reply. At appropriate times during the trial, the defendants interposed challenges to the legal sufficiency of the evidence, and after the return of the verdict, the defendant steamship company moved for a judgment in its favor notwithstanding the verdict, or, in the alternative, for a new trial. Each and all of the challenges and motions were overruled by the court, and a judgment entered as hereinbefore stated.

In its instructions to the jury, the court withdrew from their consideration the defendants' fourth, fifth and sixth affirmative defenses. In its further instructions it told them that all of the employees of the defendant steamship company engaged in the work of loading piles, were fellow servants, and that, if they should find that the defendant Hallgrimson was negligent in any particular and his negligence caused or contributed to the injury of the plaintiff, such negligence was the negligence of a fellow servant, for which the defendant steamship company would not be liable.

[1] Noticing first the appeal of the defendant steamship company, it is contended that the court erred in withdrawing its fourth and sixth affirmative defenses from the consideration of the jury. These, in their substance, were pleas to the jurisdiction of the court. We cannot think, however, that the contention merits extended discussion. The laws of the United States vesting in the Federal courts jurisdiction in admiralty and maritime causes saves to suitors the right of a common law remedy where the common law is competent to give it, and as we said in *Larson v.*

*Alaska Steamship Co.*, 96 Wash. 665, 165 Pac. 880, L. R. A. 1917F 671:

"The Federal act 'saving to suitors in all cases the right of a common law remedy where the common law is competent to give it . . .' 'leaves open,' as it is said by Justice Holmes in the case of *The Hamilton*, 207, U. S. 398, 'the common law jurisdiction of the state courts over torts committed at sea. This, we believe, always has been admitted.' The question was, Congress having remained silent, whether a state could legislate so as to extend the jurisdiction of its courts over questions maritime. The court reasoned, inasmuch as the state courts had power to follow their own notions about the law in such cases, that the power of a state to speak through its other mouthpiece, the legislature, could not be denied, and while it may be, as is said in the *Schuede* case, that the case of *The Hamilton* does not, in its terms, go beyond a holding that the Federal statute extends jurisdiction to the state courts over torts committed at sea, yet, in its spirit and its logic, it must be taken at a greater worth, for the power to exercise a common law jurisdiction, without the right to give such remedy as the common law would afford if the case were between ordinary litigants, would be to grant a right and deny the very remedy named in the act; that is, a common law remedy. To hold with the *Schuede* case, that a grant of jurisdiction to the state courts means no more than a power to give the same remedies as are allowable under the maritime law, would be to deny the primer definition of jurisdiction, that is, the power to hear and determine. To determine must, of necessity, mean the power to enter a judgment consistent with the common law, if the court hearing the case has common law jurisdiction and the case falls within the exception noted."

The highest Federal court has, it is true, in a number of recent cases, somewhat limited the power of the state "to speak through its mouthpiece, the legislature," on questions of this sort, but it is not our understanding that it has in any way modified the rule of its earlier

decisions, which recognize the common law jurisdiction of the state courts over torts committed in maritime transactions. We cannot hold, therefore, that the state courts are without jurisdiction of the cause here in question.

[2] The second contention is that the court erred in withdrawing the fifth affirmative defense from the consideration of the jury, the allegation that the injuries suffered by the plaintiff were the direct result of the acts and omissions of his fellow servants. But this was not a defense to the cause of action on which the court submitted the defendant's liability to the jury. As we have noted, its liability was submitted on the allegations and proofs relating to defects in the winches. As these were instrumentalities which it was the non-delegable duty of the defendant to see were reasonably safe, it must follow, even though the plaintiff's fellow servants had a part in their furnishing, that the defendant would not be relieved of liability because of a negligent performance of the duty on the part of such fellow servants.

[3] The defendant says, however, that the instruction withdrawing this defense from the jury and the instruction before noted, to the effect that all of the plaintiff's co-employees were his fellow servants, are inconsistent and argues that the giving of inconsistent instructions is a ground for reversal. But this is not an applicable rule in all instances. Inconsistent instructions, to work a reversal, must be prejudicial to the party complaining before such a result will follow. *Tham v. Steeb Shipping Co.*, 39 Wash. 271, 81 Pac. 711. Here the instructions, assuming that they are contradictory, were not prejudicial to the defendant. As we have pointed out, the defendant's liability arose from the negligent performance of a non-delegable duty, and was not affected by the relationship the plaintiff bore

to his fellow employees. Nor do the cases referred to by the defendant maintain a contrary rule. In each of them the contradictory or inconsistent instructions were upon a material issue, and were such as could possibly operate to the prejudice of the party complaining. An illustrative case is *Firemen's Fund Ins. Co. v. Oregon-Wash. R. & Nav. Co.,* 96 Wash. 113, 164 Pac. 765, wherein we said:

"The instructions are irreconcilable and set up for the guidance of the jury contradictory rules pertinent to a material and vital issue in the case. Under such circumstances, it is impossible for the court to say which instruction the jury followed. One of the instructions was erroneous, and it may be the jury followed that one. The instructions being thus inconsistent and contradictory upon a material and pivotal point in the case, the error must be regarded as prejudicial, requiring a reversal. *Dunn v. Puget Sound Traction, Light & Power Co.,* 89 Wash. 36, 153 Pac. 1059; *Johnson v. Heitman,* 88 Wash. 595, 153 Pac. 331; *Paysse v. Paysse,* 84 Wash. 351, 146 Pac. 840; *Mosso v. Stanton,* 75 Wash. 220, 134 Pac. 941, L. R. A. 1916A 943; *Gage v. Springston Lumber Co.,* 47 Wash. 141, 91 Pac. 558; *Elderkin v. Peterson,* 8 Wash. 674, 36 Pac. 1089; *Miller v. Vermurie,* 7 Wash. 386, 34 Pac. 1108, 35 Pac. 600."

[4] The next of the assignments of error go to the refusal of the court to sustain some one or more of the several challenges made by the defendant questioning the sufficiency of the evidence to sustain a judgment against it. The first of these is that the evidence was not sufficient to sustain the charge that the winches were defective, the charge upon which the court submitted the question of the defendant's liability to the jury. But, as we read the record, the most that can be said is that the evidence was conflicting, with a possible preponderance in favor of the defendant. There was evidence on the part of the plaintiff that the winches

were defective, both in construction and because not sufficiently flexible for the work in which they were used. This, it need not be argued, presented a question for the jury, on which their finding is obligatory on this court.

The second is that the plaintiff had acquired knowledge of their defective condition, prior to the time the pile which caused the injury was brought on board the vessel, and in consequence assumed the risk of injury from their operation. This is a question of more difficulty, yet we think it likewise one of fact for the jury, rather than one of law for the court. But it would serve no useful purpose to set out the testimony at length. We have carefully examined it, and after such examination have concluded that the trial court did not err in submitting the question of assumption of risk to the jury.

[5] A further contention of the defendant is that the verdict of the jury exonerating Hallgrimson from liability for the injury had the effect of exonerating it. In support of this contention the defendant relies upon the rule of the case of *Doremus v. Root*, 23 Wash. 710, 63 Pac. 572, 54 L. R. A. 649. But the rule there announced is not applicable to the present situation. In that case, the act of negligence which gave rise to the injury and furnished the foundation for the action was an act committed by the servant with which the principal had nothing to do. The principal was liable, not because it committed or sanctioned the act of negligence relied upon for a recovery, but because of the doctrine of *respondeat superior*—the rule of law which holds the master responsible for the negligent acts of his servant committed while the servant is acting within the general scope of his employment and in the pursuit of his master's business. In such an instance, a finding that the servant committed no act of negli-

gence must necessarily exonerate the master. To hold otherwise would be to hold that the voluntary non-directed and non-sanctioned act of the servant could be without negligence on the part of the servant committing it, and at the same time negligence on the part of the master. This thought manifestly involves a contradiction of the principle on which the doctrine of *respondeat superior* rests. But, as we have said, the liability of the defendant in this instance does not rest on the doctrine of *respondeat superior.* Its liability rests on the fact that it failed to furnish safe instrumentalities with which it required the plaintiff to work. This was its own negligence, not that of a servant, for whose act it is responsible only because it bore to him the legal relation of master.

The defendant further assigns as error that the verdict returned is excessive. The plaintiff's injuries were severe and of a permanent nature. The verdict, while large, is not beyond the province of the jury.

The appeal of the plaintiff calls in question certain instructions given by the court and certain requested instructions which it refused to give, thought to affect his right to recover against the defendant Hallgrimson. The instruction before noted, namely, the instruction to the effect that all of the employees of the defendant steamship company were fellow servants, may be contrary to our recent case of *Haverty v. International Stevedoring Co.,* 134 Wash. 235, 235 Pac. 360, 238 Pac. 581, but, even so, it was not such a material error as to require a reversal. Hallgrimson could be liable only on one possible state of facts, the evidence concerning which was in conflict. This matter the court did submit to the jury, instructing them to find for or against the defendant as they determined the fact appeared. The more general instruction complained of, therefore, even if not a correct statement

of the law, could not have in any way misled the jury as to the issue on which the defendant Hallgrimson's liability was predicated. We find no fault with the other instruction to which exception is taken, nor do we find the requested instruction applicable to the issues as presented by the evidence.

The judgment is affirmed on both appeals. Neither party will recover costs in this court.

TOLMAN, C. J., PARKER, HOLCOMB, MAIN, and MITCHELL, JJ., concur.