[No. 43239.    En Banc.    November 27, 1974.]

WASSER & WINTERS COMPANY, *Respondent*, v. JEFFERSON COUNTY, *Appellant*.

W. J. Daly, *Prosecuting Attorney*, for appellant.

*William F. Lenihan* and *James C. Hanken* (of *Lenihan, Ivers, Jensen & McAteer, P.S.*), and *S. Brooke Taylor, Prosecuting Attorney*, by *Craig A. Ritchie, Deputy*, for respondent.

*Slade Gorton, Attorney General, Richard D. Hicks, Assistant, Timothy R. Malone, Senior Assistant,* and *Ronald L. Hendry, Prosecuting Attorney,* by *Michael B. Hansen, Deputy,* amici curiae.

UTTER, J.—Jefferson County appeals from the granting of a motion for summary judgment in favor of Wasser & Winters Company who were contract purchasers of standing timber from the State of Washington. The judgment

refunded taxes imposed in 1970 and 1971 and enjoined imposition and levy of property taxes on the standing timber. The court found the contract did not vest present title in the purchaser and concluded they were not liable, as a matter of law, for the ad valorem tax. We hold that purchaser's ownership interest was sufficient to be taxed as personal property and reverse the trial court.

Personal property subject to taxation is required to be listed and assessed every year with reference to its value and ownership. RCW 84.40.020. Personal property for purposes of taxation includes all standing timber held or owned separately from ownership of the land on which it may stand. RCW 84.04.080. If the timber belongs to the State it is exempt from taxation. RCW 84.36.010. Our inquiry is directed to whether or not the standing timber is held or owned by purchaser separate from the land which is owned by the State.

The Department of Natural Resources for the State of Washington entered into a contract with Jayco Timber Company as purchaser. The contract was entitled BILL OF SALE AND CONTRACT TO PAY FOR AND REMOVE FOREST PRODUCTS FROM STATE LANDS. Jayco later assigned its rights to respondent. The contract stated "the State hereby sells and conveys to the purchaser title to forest products described in paragraph 1-2 hereof situated on the sale area described in paragraph 1-3 hereof." Volume estimates of the timber were made within the described area which specifically did not warrant or limit the volume of timber conveyed under the contract. Purchaser was allowed to enter into the sale area and remove the itemized forest products upon execution of the contract by the Commissioner of Public Lands. In the event of destruction or damage to the products, the State was to be paid by purchaser on demand from the State.

Purchaser was to pay for forest products on a Scribner scale. The contract, however, required a deposit of $192,775.50 to be held for the final payment until all forest

products were removed. Prior to any cutting, the purchaser was required to make advance payments exclusive of the initial deposit which would at all times equal or exceed the volume of the products removed. The amount to be paid was determined by the purchaser's estimate of total volume to be cut in not less than 30, or more than 90 days, from the payment on the estimate. The final determination actually taken was to be by measurement under standard log scaling rules and to be done either on a truck or ground as the Department of Natural Resources specified. The State was allowed to make adjustments in sale area boundaries or to mark timber outside such boundaries to be cut, provided it did not cover an area greater than 4 percent of the area within the adjacent cutting area.

We have identified the chief incidents of ownership of property as the right to its possession, use and enjoyment and to sell or otherwise dispose of it according to the will of the owner. *In re Estate of Eckert,* 14 Wn.2d 497, 128 P.2d 656 (1942). In *Sloan Shipyards Corp. v. Thurston County,* 111 Wash. 361, 365, 190 P. 1015 (1920), we held that the person assessed need not have a perfect and unencumbered title to the property but only that he should be vested with the apparent legal title, or with the possession coupled with such claims and evidence of ownership as will justify the assumption that he is the owner. The word "held" as applied to property, "is a technical one embracing two ideas, that of actual possession of some subject of dominion or property, and that of being invested with legal title or right to hold or claim such possession." J. Ballentine, *Law Dictionary with Pronunciations* 583 (1930).

We believe purchaser's interest in this property is sufficient to be taxable as personal property. The contract itself indicates that the State "sells and conveys . . . title to forest products . . ." The ordinary meaning of words used in a contract or deed will be used unless a different meaning is clearly intended. *Coleman v. Layman,* 41 Wn.2d 753, 252 P.2d 244 (1953); *Schauerman v. Haag,* 68 Wn.2d

868, 416 P.2d 88 (1966). Other indicia of ownership were that the risk of loss was placed with the purchaser in the event of destruction of the timber, and purchaser had an interest which he was able to convey. This was evidenced in this case by the sale from Jayco to Wasser & Winters.

The issue is not whether there is absolute control over all aspects of the timber but whether there is an interest sufficiently distinct from the fee interest of the State of Washington to come within the statutory definition of the terms "held" or "owned." RCW 84.04.080.

Our previous cases do not establish a contrary rule. In *Star Iron & Steel Co. v. Pierce County*, 81 Wn.2d 680, 504 P.2d 770 (1972), the court was concerned with whether our statute permitted taxation of possession of the nature that *Star Iron* exercised where legal title of the goods they held was in a tax-exempt body. *Star Iron* could do nothing with the property it held, to which the United States had taken title, except to complete construction. Hypothecation of that right was forbidden. It could not be sold, given away, leased or otherwise disposed of without the government's right following the property. We held in *Star Iron* that there was no property right but a usufructuary right to complete fabrication for the benefit of the owner. While there is some language in the *Star Iron* case which could support a broader holding that there may be no taxation of interests in personal property less than full ownership, the facts in the case do not support such a holding. *Star Iron* should not be extended beyond the facts before the court in that case.

In *Skate Creek Logging Co. v. Fletcher*, 46 Wn.2d 160, 161, 278 P.2d 1009 (1955), this court had before it an action to enjoin tax assessment of timber under a contract of sale. That contract provided "Title to all timber included in this agreement shall remain in the United States until it has been paid for, *felled and scaled*, measured or counted." With reference to that contract language we held, at page

162, that "ascertainment and segregation under the contract cannot occur prior to the *existence* of the merchantable *logs* as such, which are, in fact, the subject matter of the contract." The language of that contract was markedly different from the present one. In contrast to the case before us, it did not convey title, transfer the risk of loss or allow the purchaser to sell his interest.

■ Purchaser also contends there could be no passage of title to him because the Commissioner of Public Lands had no authority to issue and sign a bill of sale until the purchase price was paid in full. RCW 79.01.232[1] RCW 79.01.132 (Laws of 1961, ch. 73, § 1), in effect at the time of the signing of this contract, stated that "When any timber . . . on state lands is sold separate from the land, the full purchase price thereof shall be paid in cash: *Provided,* That upon the request of the purchaser, any sales over two thousand dollars appraised value shall be on the installment plan." These two statutes should be read together with RCW 79.01.212 which directs the Commissioner to issue a bill of sale under specific conditions. One of these conditions is "that the payment, required by law to be made at the time of making the sale, has been made, and that the best interests of the state may be subserved thereby . . ." Purchaser did make his required downpayment, and the other conditions of the contract and RCW 79.01.212 were apparently met. The Commissioner, therefore, after determining that the sale was in the best interest of the State, was free to confirm the sale, issue the contract and sign the bill of sale.

---

[1] RCW 79.01.232:

"Bill of sale for valuable materials sold separately. When timber, fallen timber, stone, gravel, or other valuable material, shall have been sold separate from the land and the purchase price paid in full, the commissioner of public lands shall cause a bill of sale, signed by the commissioner and attested by the seal of his office, setting forth the time within which such material shall be removed, to be issued to the purchaser and to be recorded in the office of the commissioner of public lands, upon the payment of the fee provided for in this chapter."

The retention by the State of a contingent reversionary interest in some of the timber does not render the purchaser's interest untaxable. It poses a problem of accurate appraisal of the value of the holding rather than creating an inability to tax the purchaser's interest.

The judgment of the trial court granting purchaser's motion for summary judgment is reversed.

HALE, C.J., and FINLEY, ROSELLINI, HUNTER, HAMILTON, STAFFORD, WRIGHT, and BRACHTENBACH, JJ., concur.

Petition for rehearing denied April 15, 1975.