[No. 8096–2–I.   Division One.   March 2, 1981.]

CLARENCE GIBSON, *Defendant,* v. THE PORT OF
SEATTLE, *Appellant,* SEATTLE CRESCENT
CONTAINER SERVICES, *Respondent.*

*William Robert Hickman* (of *Reed, McClure, Moceri & Thonn, P.S.*), for appellant.

*Mark E. Johnson* (of *Lane, Powell, Moss & Miller*), for respondent.

RINGOLD, A.C.J.—Clarence Gibson (not a party to this appeal) filed a negligence and breach of warranty action against the Port of Seattle (Port) for injuries he sustained while working on a straddle carrier provided by the Port. The Port filed a third party complaint against Gibson's employer, Seattle Crescent Container Services (Crescent), alleging a right to indemnity under a contract between Crescent and the Port. Crescent filed an answer, several counterclaims, a fourth party complaint against Clarklift of Washington, Inc., and a motion for summary judgment against the Port. The trial court granted Crescent's summary judgment motion and gave two reasons for its decision. First, the indemnity provision was voided by section 905 of the federal Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. §§ 901 *et. seq* (Act). Second, the Port's third party complaint stated no grounds upon which relief could be granted because it did not allege that Crescent's conduct caused the injury.

After prevailing on its motion for summary judgment, Crescent entered a voluntary nonsuit on its counterclaims and fourth party complaint. The trial court subsequently denied the Port's motions to reconsider and for leave to amend. Shortly after entering a final order dismissing the Port's third party complaint, the trial court signed an order confirming the settlement of Gibson's complaint against the Port for $45,000 plus $20,000 in attorney's fees and costs. The Port appeals the dismissal of its third party complaint and raises two issues:

1. Does section 905 of the Longshoremen's and Harbor Workers' Compensation Act bar the Port's contractual indemnity action?

2. Does the Port's third party complaint fail to state a

claim upon which relief can be granted?

We hold that the Act does not bar the Port's action and that the complaint states a claim upon which relief can be granted, and we therefore reverse.

INDEMNITY AGREEMENTS UNDER THE ACT

Title 33 U.S.C. § 905 was most recently amended in 1972 by designating the existing provision as subsection (a) and adding subsection (b). Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. § 905 (Supp. 2), Pub. L. No. 92–576, § 18(a), 86 Stat. 1263 (1972). Section 905 reads:

(a) The *liability of an employer* prescribed in section 904 of this title shall be *exclusive* and in place of all other liability of such employer to the employee, his legal representative, husband or wife, parents, dependents, next of kin, and anyone otherwise entitled to recover damages from such employer at law or in admiralty *on account of such injury or death,* except that if an employer fails to secure payment of compensation as required by this chapter, an injured employee, or his legal representative in case death results from the injury, may elect to claim compensation under the chapter, or to maintain an action at law or in admiralty for damages on account of such injury or death. In such action the defendant may not plead as a defense that the injury was caused by the negligence of a fellow servant, or that the employee assumed the risk of his employment, or that the injury was due to the contributory negligence of the employee.

(b) In the event of *injury* to a person covered under this chapter *caused by the negligence of a vessel,* then such person, or anyone otherwise entitled to recover damages by reason thereof, may bring an action against such vessel as a third party in accordance with the provisions of section 933[1] of this title, and the employer shall not be liable to the vessel for such damages directly or indirectly and any agreements or warranties to the contrary shall be void. If such person was employed by the vessel to provide stevedoring services, no such action

---

[1]This section allows an employee to file an action for damages against any third party responsible for his or her injuries without losing the right to compensation from the employer. 33 U.S.C. § 933.

shall be permitted if the injury was caused by the negligence of persons engaged in providing stevedoring services to the vessel. If such person was employed by the vessel to provide ship building or repair serves, no such action shall be permitted if the injury was caused by the negligence of persons engaged in providing ship building or repair services to the vessel. The liability of the vessel under this subsection shall not be based upon the warranty of seaworthiness or a breach thereof at the time the injury occurred. The remedy provided in this subsection shall be exclusive of all other remedies against the vessel except remedies available under this chapter.

(Italics ours.)

Section 905(a) limits an employer's liability on account of an employee's injury or death to the liability prescribed in the Act. Prior to the 1972 amendments, the Supreme Court held that this exclusive liability provision did not bar an indemnity action against an employer by a third party that was liable for the employee's injuries. *Ryan Stevedoring Co. v. Pan–Atlantic S.S. Corp.,* 350 U.S. 124, 100 L. Ed. 133, 76 S. Ct. 232 (1956). Typically, a vessel strictly liable on a seaworthiness theory could obtain indemnity from the employer under express or implied contracts or under a tort theory of transferring the loss to the actively negligent party. *See Zapico v. Bucyrus–Erie Co.,* 579 F.2d 714 (2d Cir. 1978). Under the circumstances of this case, an express contractual provision, the courts have held that the indemnity liability is not "on account of" an employee's injury. It is the result of an independent contractual obligation. *Ryan Stevedoring Co. v. Pan–Atlantic S.S. Corp., supra; Zapico v. Bucyrus–Erie Co., supra.* By enacting 33 U.S.C. § 905(b), Congress rejected the application of this analysis to "vessels" and barred "vessels" from seeking indemnity from employers. Congress did not address the issue of indemnity for nonvessels.

The entire Act was extensively amended in 1972, and the purpose of the amendments is well documented. First, Congress intended to substantially increase the benefits available to an injured worker. Second, Congress

intended to enable the worker to pursue remedies against both the employer under the Act and against a negligent vessel, but because benefits were substantially increased under the amendment, Congress eliminated the absolute liability of a vessel under the doctrine of seaworthiness. Congress required the worker to prove negligence by the vessel in order to recover damages. Third, because the vessel would be liable only as a result of its own wrongful conduct, Congress saw no reason to continue to allow the vessel to recover its losses from the employer on an indemnity theory. The addition of subsection (b) was intended to void any indemnification agreement between the employer and the vessel. H.R. Rep. No. 92–1441, 92d Cong., 2d Sess. 2–8, 22, *reprinted in* [1972] U.S. Code Cong. & Ad. News 4700–4705, 4719.

The Port is not a "vessel" as defined in the Act, 33 U.S.C. § 902(21), and Crescent concedes that section 905(b) does not bar indemnity relief for the Port. Crescent argues, however, that the amendments in 1972 reveal a congressional intent to apply the exclusive liability protection in section 905(a) more broadly and bar indemnity relief for nonvessels. Crescent contends: (1) Congress intended to give the language of section 905(a) its plain meaning and intended to overrule the strained reading in the *Ryan* opinion; (2) this intent is evident in Congress' concern with the social cost of collateral third party litigation and the desire to increase workers' compensation without diverting employers' resources to pay the costs of litigating indemnity claims; (3) a reasonable reading of section 905(a), particularly in light of Congress' intent, is that this contractual indemnity action arises on account of an employee's injury and, therefore, is barred; and (4) Judge Friendly's decision in *Zapico* is incorrect in several respects and is not controlling in this jurisdiction. *See Edmonds v. Compagnie Generale Transatlantique,* 443 U.S. 256, 61 L. Ed. 2d 521, 99 S. Ct. 2753 (1979); *Director, Workers' Compensation Programs v. Rasmussen,* 440 U.S. 29, 59 L. Ed. 2d 122, 99 S. Ct. 903 (1979); *Northeast Marine Terminal Co. v.*

*Caputo,* 432 U.S. 249, 53 L. Ed. 2d 320, 97 S. Ct. 2348 (1977).

Were the congressional intent as Crescent argues, section 905(b) directed solely to "vessels" would have been unnecessary. Congress could have simply declared its intent to protect employers from indemnity in all instances. While some courts have found a congressional intent to reduce the wasteful litigation caused by nonvessels seeking indemnity, they have gone no further than to deny indemnity sought on a tort or implied contract theory. *Oman v. Johns–Manville Corp.,* 482 F. Supp. 1060 (E.D. Va. 1980); *Spadola v. Viking Yacht Co.,* 441 F. Supp. 798 (S.D.N.Y. 1977). Nothing in these or any other decision brought to our attention undermines the rule that the employer is free to contract to indemnify nonvessel third parties for damages they pay to an employee of the indemnitor. We find the opinion of Judge Friendly in *Zapico* to be a thorough historical analysis of the act and the effect of the 1972 amendments. The court there held that *Ryan* retains its viability and that "the statute explicitly cuts off indemnity only to a 'vessel.'" *Zapico,* at 721. The opinion fully considered and rejected several public policy arguments that indemnity agreements with nonvessels should also be voided.

In 1972, Congress extended the Act's coverage inland from the shoreline and created a greater likelihood of indemnity actions by nonvessels. 33 U.S.C. § 903. Congress, however, chose to attack the primary problem presented to it in the testimony received prior to the 1972 amendments. That problem was third party litigation by vessels. As mentioned in the House Report, Congress expects to see further progress in reducing employee injuries and is ready to reexamine the whole third party suit question if it appears that the 1972 amendments have not been productive. H.R. Rep. No. 92–1441, 92d Cong., 2d Sess. 8, *reprinted in* [1972] U.S. Code Cong. & Ad. News 4705. It is for Congress to examine whether third party actions by nonvessels create the same or similar problems as such

actions by vessels and to decide whether agreements to indemnify nonvessels should be declared void.

We conclude that the direct contractual relationship between Crescent and the Port is fully enforceable as to indemnity. Nothing in the language of the 1972 amendments nor the legislative history warrants the conclusion that the rule in *Ryan* was overruled with respect to express contracts with nonvessel third parties. While cases have disagreed on the continued vitality of various forms of implied indemnity for nonvessels, there is no authority to support Crescent's contention that it should not be bound by its express, contractual agreement to indemnify the Port. Crescent's public policy arguments, though persuasive, do not alter the language of section 905 or the *Ryan* rule for nonvessels. Those public policy arguments must be presented to Congress, not the courts.

SUFFICIENCY OF THE THIRD PARTY COMPLAINT

In its third party complaint, the Port alleged that its right to indemnity from Crescent arose from the following contractual language:

> The Contractor [Crescent] shall be responsible for and shall indemnify, defend and hold harmless the Port from all liabilities or expenses of defense of claims or suits for loss of or damage to property of third persons and for bodily injury or death of any person, including employees of the Contractor, . . . arising out of the performance of the services by the Contractor as specified in this Contract; provided, however, that the Port shall not be entitled to such indemnity, defense or holding harmless, when the accident or occurrence is caused solely by negligent or intentional acts of the Port, or failure of the Port to perform its obligations under Article 7[2] of this Contract.

---

[2]Article 7 reads: "Information and equipment furnished by Port of Seattle:

"A. Port of Seattle shall give Contractor all necessary information and instructions, including notice relating to condition of containers which requires special handling, as far in advance as possible so that Contractor may schedule efficiently the services set forth in Articles 4 and 5.

"B. Port of Seattle shall provide adequate lights for night work and necessary materials for securing containers and other cargo.

The complaint alleged that Gibson's injuries were not caused solely by the Port's negligent or intentional acts or by the Port's failure to perform contractual obligations. Further allegations stated that Gibson was Crescent's employee and that he was injured in the course of performing his duties for Crescent. The allegations also stated that Gibson's negligence was the sole cause of his injuries.

Crescent contends that the indemnity agreement must be construed strictly against the Port and because there is no express allegation that Crescent caused or concurred in causing the accident, the Port cannot pursue its action.

■ The Port's third party complaint states sufficient facts to give notice of a claim upon which relief could be granted. Under the contract, a cause of action existed if the Port's actions were not solely responsible for the injuries of the employee. The Port made an allegation in these terms. Even if the Port were required to allege Crescent's responsibility, it was sufficient to allege that Gibson was performing his duties as Crescent's employee when injured by his negligent acts. Crescent's negligence did not have to be expressly alleged where, as here, the allegations were sufficient to make its negligence readily conceivable. *Berge v. Gorton,* 88 Wn.2d 756, 567 P.2d 187 (1977). As held in *Berge,* no claim should be dismissed unless it appears, beyond doubt, that the plaintiff cannot prove any facts in support of its claim that would entitle it to relief.

The Port asks us to direct a judgment in its favor in light of the settlement with Gibson and a jury verdict in the Port's favor in a separate action against Crescent for damage to the straddle carrier. The trial court should have the first opportunity to rule on this and any other issues that may arise.

---

"C. Port of Seattle will provide container moving and handling equipment for Contractor's use in handling Port of Seattle containers; Contractor shall not use such equipment or vessel equipment if it is apparent that it is not in good order. All such equipment shall meet the standards of Item 205, Seattle Container Tariff No. 1."

We, therefore, reverse and remand to the trial court for further proceedings consistent herewith.

ANDERSEN and CORBETT, JJ., concur.

Reconsideration denied March 24, 1981.

Review denied by Supreme Court May 22, 1981.