[No. 12663–6–I.   Division One.   April 11, 1984.]

NORTHWEST AIRLINES, *Appellant,* v. HUGHES AIR CORPORATION, *Respondent.*

*Karr, Tuttle, Koch, Campbell, Mawer & Morrow, P.S., Frederick M. Meyers, Mark R. Johnsen,* and *Philip A. Talmadge,* for appellant.

*Reed, McClure, Moceri & Thonn, P.S., William R. Hickman,* and *Gary A. Western,* for respondent.

WILLIAMS, J.—Northwest Airlines brought this action against Hughes Air Corporation seeking to enforce the indemnification clause of a commercial lease agreement. The trial court granted Hughes summary judgment. We reverse.

The relevant facts are these: Hughes leased a portion of an air cargo building owned by Northwest, the lease agreement containing the following clause:

> INDEMNITY. Lessee shall indemnify the Lessor from and against any and all claims, demands, causes of action, suits or judgments (including costs and expenses incurred in connection therewith) for deaths or injuries to persons or for loss of or damage to property arising out of or in connection with the use and occupancy of the premises by Lessee, its agents, servants, employees or invitees whether or not caused by Lessor's negligence. In the event of any claims made or suits filed, Lessor shall give Lessee prompt written notice thereof and Lessee shall have the right to defend or settle the same to the extent of its interest hereunder.

David Walquist, a Hughes employee, was injured when he slipped on oil from a pallet jack while carrying a coffee urn through a portion of the air cargo building occupied by Northwest. Walquist filed a civil action for damages against

Northwest the defense of which was twice tendered to Hughes but refused. The claim was settled by stipulation and order of dismissal whereby Northwest paid Walquist $225,000. Northwest seeks indemnification from Hughes.

The first question is whether the indemnification provision contained the necessary waiver of Hughes' employer industrial insurance immunity to be enforceable. Hughes argues that the provision's reference to injured "persons" did not explicitly include injured Hughes employees and, thus, the requisite expressed waiver of immunity was never executed.

The Industrial Insurance Act, RCW Title 51, immunizes an employer from tort actions arising out of work–related injuries to its employees. It does not, however, preclude an employer from voluntarily assuming an independent contractual obligation to indemnify a third party for employee injuries. *Seattle–First Nat'l Bank v. Shoreline Concrete Co.,* 91 Wn.2d 230, 242, 588 P.2d 1308 (1978). Such agreements will be enforced whenever an intent to provide for indemnification is clearly expressed. *Glass v. Stahl Specialty Co.,* 97 Wn.2d 880, 886, 652 P.2d 948 (1982); *Noia v. Ferrell–Penning, Inc.,* 36 Wn. App. 13, 14, 671 P.2d 790 (1983). *See also Jones v. Strom Constr. Co.,* 84 Wn.2d 518, 527 P.2d 1115 (1974). The indemnification clause need not specifically mention the Industrial Insurance Act; an intention to waive the employer's immunity may be found from the substance of the written indemnification provision itself. *Redford v. Seattle,* 94 Wn.2d 198, 615 P.2d 1285 (1980).

The indemnification provision in the commercial lease between Northwest and Hughes called for Hughes (the lessee) to indemnify Northwest (the lessor) against "all claims . . . for . . . injuries to persons . . . arising out of or in connection with the use and occupancy of the premises by Lessee [or] its . . . employees. . . ." The word "persons" is in no way modified. There is no reason to exclude Hughes employees from its compass. *Wasser & Winters Co. v. Jefferson Cy.,* 84 Wn.2d 597, 599, 528 P.2d 471 (1974).

The second question is whether the indemnification provision is unenforceable as against public policy because it shifts liability for Northwest's sole negligence onto Hughes.[1]

■ The Supreme Court has made it clear that there is no absolute bar to such agreements:

> In *Griffiths v. Henry Broderick, Inc.*, 27 Wn.2d 901, 182 P.2d 18, 175 A.L.R. 1 (1947), we approved the rule that an indemnity contract will not be construed to indemnify the indemnitee against losses resulting to him through his own negligent acts where such intention is not expressed in *unequivocal terms. See also* 175 A.L.R. 1 (1947). Although we overruled that case in *Jones* insofar as it was inconsistent with *Jones,* the policy stated in *Griffiths* and the rules of construction applicable to indemnity contracts, as stated above, were unaffected. We repeated that clauses purporting to exculpate an indemnitee from liability for losses flowing from his own acts or omissions are not favored as a matter of public policy and are to be clearly drawn and strictly construed. *See* 6A A. Corbin, *Corbin on Contracts* § 1472 (1962). Cf. *Fleming v. Stoddard Wendle Motor Co.,* 70 Wn.2d 465, 469, 423 P.2d 926 (1967).

*Dirk v. Amerco Mktg. Co.,* 88 Wn.2d 607, 612–13, 565 P.2d 90 (1977). Thus, where an agreement unequivocally calls for indemnification for the indemnitee's sole negligence it may be enforced. *Dirk,* at 612–13. In accord is *Calkins v. Lorain Div. of Koehring Co.,* 26 Wn. App. 206, 210, 613 P.2d 143 (1980), holding that such agreements must be clearly expressed, will be strictly construed and any doubts or ambiguities will be resolved in favor of the indemnitor.

The indemnification provision in the commercial lease between Northwest and Hughes called for Hughes (the les-

---

[1]For the most part, the parties are in agreement that the accident was the result of Northwest's sole negligence. In its reply brief, however, Northwest briefly alludes to the possibility that Hughes employees may have contributed to the accident. The record is devoid of any indication that any Hughes employee, other than possibly Walquist, committed a negligent act. Even if Walquist had been negligent, of course, his negligence could not be imputed to Hughes. *Wicklund v. Gus J. Bouten Constr. Co.,* 36 Wn. App. 71, 674 P.2d 184 (1983).

see) to indemnify Northwest (the lessor) against "all claims
. . . whether or not caused by Lessor's negligence." This
statement unequivocally requires Hughes to indemnify
Northwest against its own negligence. It meets the require-
ments of *Dirk* and *Calkins.*

■ Moreover, this agreement violates no public policy.
Freedom of contract is the general condition. Public policy
must not interfere with that freedom except for good rea-
son. *McCutcheon v. United Homes Corp.,* 79 Wn.2d 443,
486 P.2d 1093 (1971). In that case, the landlord of a mod-
ern, multi–family dwelling complex was relieved of respon-
sibility for his own sole negligence by an exculpatory clause
in the standard lease signed by all tenants. The Supreme
Court said that the clause was against public policy
because:

> Basic to the entire discussion is the common law rule
> that one who leases a portion of his premises but retains
> control over the approaches, common passageways, stair-
> ways and other areas to be used in common by the owner
> and tenants, has a duty to use reasonable care to keep
> them in safe condition for use of the tenant in his enjoy-
> ment of the demised premises. *Schedler v. Wagner,* 37
> Wn.2d 612, 225 P.2d 213, 230 P.2d 600 (1950); Restate-
> ment (Second) of Torts § 360, at 250 (1965). The land-
> lord is required to do more than passively refrain from
> negligent acts. He has a duty of affirmative conduct, an
> affirmative obligation to exercise reasonable care to
> inspect and repair the previously mentioned portions of
> the premises for protection of the lessee.

*McCutcheon v. United Homes Corp.,* at 445.

Further, the court said:

> a clause which exculpates the lessor from liability to its
> lessee, for personal injuries caused by lessor's own acts of
> negligence, not only lowers the standard imposed by the
> common law, it effectively *destroys* the landlord's affir-
> mative obligation or duty to keep or maintain the "com-
> mon areas" in a reasonably safe condition for the tenant's
> use.

*McCutcheon v. United Homes Corp.,* at 447.

That reasoning does not apply to this case because

Hughes and Northwest stand upon equal terms and the indemnification provision relates exclusively to their private affairs without affecting the employees of either company or others lawfully upon the premises.[2] The entire air cargo facility is in use—by either Hughes or Northwest—and is thus subject to routine state safety inspections. Northwest has the affirmative duty of maintaining its area, including the approaches, common passageways and the like, safe for its employees. The indemnification agreement did not relieve Northwest of this responsibility. Northwest's area remains as safe for Hughes employees as it is for its own.

Northwest and Hughes each operate a fleet of huge aircraft and are fully capable of assigning risks of loss between themselves without either party shirking its duty of using reasonable care to inspect and repair the premises for the protection of all concerned. The provision is valid and enforceable. *Gabl v. Alaska Loan Inv. Co.*, 6 Wn. App. 880, 884, 496 P.2d 548 (1972).

Reversed.

CORBETT, A.C.J., concurs.

RINGOLD, J. (concurring in the result)—I depart from the majority opinion to the extent that it incorrectly states the second issue as: "whether the indemnification provision is unenforceable as against public policy because it shifts liability for Northwest's sole negligence onto Hughes." This issue is not before us. Whether Walquist's injury was caused by the sole negligence of Northwest has not been determined at this stage of the proceedings.

In its complaint for indemnification, Northwest alleged that Hughes' injured employee, Walquist, was contributorially negligent in causing his injury. Under the doctrine of

---

[2]The exculpatory clause in the *McCutcheon* case violated public policy because it deprived the injured party of a legal remedy. In this case, Walquist has his remedy (a lawsuit which garnered him $225,000). The only question is: who must ultimately pay the $225,000?

respondeat superior, the conduct of an employee acting within the scope of employment is chargeable to the employer. *Miller v. Alaska S.S. Co.,* 139 Wash. 207, 214, 246 P. 296 (1926). Therefore, if Walquist was contributorially negligent, this case would concern the concurrent negligence of Hughes and Northwest rather than the sole negligence of Northwest.

I am aware of the holding in *Wicklund v. Gus J. Bouten Constr. Co.,* 36 Wn. App. 71, 674 P.2d 184 (1983), but do not find it persuasive. Generally, the claimed negligence of an employer/indemnitor arises from the conduct of the injured employee; in only a few cases is the claimed negligence limited to the acts of a fellow employee. I see no reason in logic or precedent to preclude imputing the negligence of the injured employee to the employer.

This court has, in several unpublished opinions, and in *Gibson v. Port of Seattle,* 28 Wn. App. 508, 515, 624 P.2d 1168, *review denied,* 95 Wn.2d 1022, *cert. denied,* 454 U.S. 941, 70 L. Ed. 2d 249, 102 S. Ct. 477 (1981), held that under an indemnity agreement, the employer/indemnitor is accountable for the negligence of the injured employee if the employee was acting within the scope of employment.

It is undisputed that Walquist was acting within the scope of employment when injured. Whether Walquist was contributorially negligent is a disputed question of fact which at this stage of the proceedings remains unresolved. Granting a summary judgment of dismissal was therefore improper.

Reconsideration denied June 27, 1984.

Review granted by Supreme Court October 5, 1984.