[No. 27503-1-II.   Division Two.   September 27, 2002.]

THE DEPARTMENT OF LABOR AND INDUSTRIES, *Appellant*, v. MITCHELL BROTHERS TRUCK LINE, INC., *Respondent*.

*Christine O. Gregoire, Attorney General*, and *James S. Johnson, Assistant*, for appellant.

*Charles R. Bush* (of *Vandeberg, Johnson & Gandara*), for respondent.

BRIDGEWATER, J. — We are asked to decide whether a truck driver is "operating a truck which he owns" when he leases a truck from a common carrier and must lease the truck back to the same common carrier. Br. of Appellant at 3. We hold that this kind of truck driver is an "owner" under Title 51 RCW and not a "worker" under RCW 51.08.180(1) because the driver is entitled to possess, use, and enjoy the truck under the specific terms of the lease. Thus, the common carrier need not pay industrial insurance premiums for these drivers. We affirm.

Mitchell Brothers Truck Line, Inc. (hereinafter Mitchell Bros.), is a trucking company in the business of hauling goods throughout the continental United States and Canada. Mitchell Bros. has an estimated 120 "tractors" (a "tractor" is the engine and cab portion of a semitruck), all of which it leased from Portland Freightliner, which is owned by Mercedes-Benz. Mitchell Bros. employs 80 truckers to drive their trucks, and they also lease trucks from 24 individuals. This case concerns only the 24 individuals.

The plan that we address is not a scheme to avoid taxation. Rather, Mitchell Bros. created the plan because it needed drivers and devised an economic incentive to achieve that end. Under the scheme, Mitchell Bros. subleases its trucks to the 24 independent truck drivers for a 48-month term. At the end of this term, the independent truck driver (the lease-operator) has an option to purchase the leased truck for the truck's residual value. Typically, lease-operators cannot afford to buy their own tractors, and their credit is subpar. Thus, the leasing arrangement offers an entrepreneurial advantage to the lease-operator: becoming the sole owner of a tractor.

Under the lease, the lease-operator, upon executing the above described lease, immediately leases the same truck back to Mitchell Bros. (the "lease-back") for a term of one year, which term automatically renews on an annual basis unless the lease is terminated prior to such renewal. Under the lease-back agreement, the lease-operator is compensated at a rate of $.91 per loaded mile and $.40 per empty mile for all Mitchell Bros. loads hauled.[1] If the lease-operator opts to purchase the tractor at the end of the four year term, he is then free to contract with whomever he wishes.

On March 16, 1999, the Department of Labor and Industries (the Department) issued a notice and order of assessment of industrial insurance taxes, for the first through fourth quarter of 1998, against Mitchell Bros. in the amount of $259,579.16. The director of the Department affirmed the assessment order. Mitchell Bros. filed a timely notice of appeal to the Board of Industrial Insurance Appeals (the Board). An industrial appeals judge issued a proposed decision and order which reversed and remanded the order assessing taxes and penalties. The Board adopted the proposed decision and order as its final order. Thereaf-

---

[1] The payment is deposited into an account from which the operating expenses are paid. The account balance is designed to accumulate an approximate $35,000 excess, which, at the end of four years, should equal the truck purchase option price.

ter, the Department appealed to Thurston County Superior Court, which affirmed the Board's final order. The Department now appeals.

## I. Standard of Review

The Administrative Procedure Act (ch. 34.05 RCW) governs judicial review of the Board's decision in an assessment case. RCW 51.48.131. We review the agency record rather than the trial court record. *See Jefferson County v. Seattle Yacht Club*, 73 Wn. App. 576, 588, 870 P.2d 987, *review denied*, 124 Wn.2d 1029 (1994). We review the Board's findings of fact for substantial evidence, sufficient to persuade a fair-minded person of the declared premise. *Towle v. Dep't of Fish & Wildlife*, 94 Wn. App. 196, 204, 971 P.2d 591 (1999); *Diehl v. Mason County*, 94 Wn. App. 645, 652, 972 P.2d 543 (1999); *see* RCW 34.05.570(3)(e). We review the Board's legal conclusions de novo, but we give substantial weight to the agency's interpretation when the subject area falls within the agency's area of expertise. *Towle*, 94 Wn. App. at 204; *Diehl*, 94 Wn. App. at 652; *Hamel v. Employment Sec. Dep't*, 93 Wn. App. 140, 144-45, 966 P.2d 1282 (1998), *review denied*, 137 Wn.2d 1036 (1999). The employer challenging the validity of the agency action bears the burden of proof before the Board to show that the premiums were assessed incorrectly. RCW 34-.05.570(1)(a); *Jamison v. Dep't of Labor & Indus.*, 65 Wn. App. 125, 133, 827 P.2d 1085 (1992). On appeal, "[t]he burden of proving that the agency action was invalid . . . lies with the party challenging the action." *Mader v. Health Care Auth.*, 109 Wn. App. 904, 911, 37 P.3d 1244, *review granted*, 146 Wn.2d 1021 (2002).

Here, although the industrial insurance judge characterized her determination that lease-operators are not "workers" as a "finding of fact," that determination was actually a conclusion of law as it was premised upon the legal conclusion that the operators "own" the vehicles they lease, as that term is used in RCW 51.08.180(1). We treat

conclusions of law labeled as findings of fact as conclusions of law when challenged on appeal. *Willener v. Sweeting*, 107 Wn.2d 388, 394, 730 P.2d 45 (1986). As the assigned error in this case relates to statutory construction, de novo review is proper; and we construe the statute liberally in the workers' favor. *Ochoa v. Dep't of Labor & Indus.*, 143 Wn.2d 422, 425-26, 20 P.3d 939 (2001).

## II. Indicia of Ownership

■ ■ There is no directly controlling authority, either case law or statute, that addresses whether lease-operators are "owners." Although we may use a dictionary in determining the ordinary meaning of a term, *City of Redmond v. Burkhart*, 99 Wn. App. 21, 24, 991 P.2d 717 (2000), the *Black's Law Dictionary* definition of "own" is not very helpful: "[t]o have or possess as property." BLACK'S LAW DICTIONARY 1130 (7th ed. 1999). As such, and because "owns" is not defined in Title 51 RCW or in industrial insurance case law, we employ the "indicia of ownership" inquiry as the relevant test on the issue of lease-operator ownership of the leased trucks.

In *Wasser & Winters Co. v. Jefferson County*, the court identified the "right to its possession, use and enjoyment and to sell or otherwise dispose of [the property] according to the will of the owner" as indicia of property ownership. *Wasser & Winters Co. v. Jefferson County*, 84 Wn.2d 597, 599, 528 P.2d 471 (1974). The court also stated: "we held that the person assessed need not have a perfect and unencumbered title to the property but only that he should be vested with the apparent legal title, or with the possession coupled with such claims and evidence of ownership as will justify the assumption that he is the owner." *Wasser*, 84 Wn.2d at 599. *Wasser* was a timber tax case, and the court referred to the risk of loss and an interest that could have been conveyed. The case did not hold that the right to sell the timber was the sine qua non of ownership that allowed this owner to be taxed, but it did allow that there was some

interest that could have been conveyed. It is only moderately helpful.

The lease-operators had the following rights and responsibilities under the lease, lease-back arrangement. The lease term was 48 months. At the end of that term, lease-operators had an option to purchase the leased truck for the "residual value," plus any amount then owed to Mitchell Bros. During the term of this lease, the lease-operator was responsible for and bore the cost of "all necessary repairs, maintenance and replacement." Ex. 2 at 2. Also, the lease-operator bore the "cost, expenses, fees and charges incurred in the use and operation of the leased Equipment, including but not limited to fuel, oil, grease, repairs, maintenance, replacements, tires, storage, parking, tools, fines, registration and license fees and plates, and all taxes (including sales, use, personal property or occupation)." Ex. 2 at 2. Lease-operators also had to maintain insurance on the trucks (with Mitchell Bros. as a named insured), and indemnify and hold Mitchell Bros. harmless.

Under the lease-back, Mitchell Bros. leased back the same truck from the operator that it leased under the initial lease. In effect, the arrangement obligated the lease-operator to haul Mitchell Bros.' loads. But, the lease-back agreement did not alter the lease-operator's responsibility for operating expenses, taxes, maintenance, repairs, etc., which were contracted for in the original lease. Additionally, although the lease-back agreement obligated the lease-operator to transport "such commodities as [Mitchell Bros.] may require," both Henry R. Patton, a lease-operator, and Gordon Cohoon, president of Mitchell Bros., testified that lease-operators could turn down loads that Mitchell Bros. designated, and could hire other drivers to haul loads using the leased truck. Ex. 3 at 2. The lease-back agreement also obligated lease-operators to carry, at their expense, "bobtail" insurance covering the equipment; the agreement also placed the risk of loss or damage to the equipment on the lease-operator. Ex. 3 at 3, 4. As to the risk of loss on hauled

cargo, lease-operators were strictly liable to Mitchell Bros. "for the full amount of any cargo loss or damage not paid by available insurance." Ex. 3 at 4.

In contending that lease-operators do not "own" their leased trucks, the Department does not dispute that the lease-operators enjoy the rights to possess, use, and enjoy the trucks. The lease-operators' rights to use and possess the leased trucks cannot be seriously questioned, as the lease-back to Mitchell Bros. contemplated that the lease-operators, or someone they designated, would haul Mitchell Bros.' loads. "Enjoyment," in an economic sense, also cannot be seriously questioned, as the lease-operators drove the leased trucks for their own financial gain. Together with the allocations of risk of loss and operating expenses noted above (responsibilities that normally attend use, possession, and enjoyment of property), the fact that lease-operators effectively control their own use of leased trucks indicates that operators enjoy the rights to possess, use, and enjoy the trucks.

The Department's primary argument under the indicia of ownership test concerns restrictions on the right to transfer. The Department contends that, because lease-operators "cannot assign their interest in the trucks to someone else, and cannot even borrow against a truck's value," their interest does not satisfy the indicia of ownership test because they cannot "sell or otherwise dispose of the property." Appellant's Reply Br. at 10. The anti-assignment clause contained in the initial lease prohibits virtually any transfer of the truck or of the lease-operator's interest in the lease. The clause also states that "[t]he Lessee [lease-operator] shall not create or suffer or permit to be created any lien" on the leased truck. Ex. 2 at 4.

Washington courts have consistently recognized that the right to dispose of property is among the "fundamental attributes of property ownership." *Guimont v. Clarke*, 121 Wn.2d 586, 595, 854 P.2d 1 (1993), *cert. denied sub nom. Dir., Dep't of Cmty. Dev. v. Guimont*, 510 U.S. 1176 (1994). While the right to dispose of property can include the power

to sell or convey one's interest, courts have defined "dispose" to encompass other, more nontraditional, methods. *See J.M. Carey & Brother v. City of Casper*, 66 Wyo. 437, 213 P.2d 263, 270 (1950) (quoting *Bullene v. Smith*, 73 Mo. 151, 161, 1880 WL 9462, at *6) ("[Disposal] covers 'all . . . alienations of property . . . such as pledges, pawns, gifts, bailments . . . .' "). While the lease expressly prohibits "disposal" in the traditional manner via sale, encumbrance, or assignment, an operator can hire other drivers for the leased truck, drive for other common carriers, and turn down Mitchell Bros.' loads. Considering this, we must decide whether lease-operators can be classified as "owners" for the purpose of industrial insurance premiums when the lease-operators cannot sell or encumber the leased truck.

Several factors convince us that the ability to alienate or encumber is not the sine qua non of ownership, which would prevent the lease-operators from being denoted as "owners."

(1) The statute does not define "owner," leaving the term vague and subject to interpretation;

(2) The economy sometimes dictates and creates different financial relationships that government must cope with (*see, e.g., Wasser*, 84 Wn.2d 597 recognizing this by referring to that bundle of rights that add up to ownership for the purpose of taxing of timber);

(3) The Department concedes that it "treats as an owner anybody who leases a vehicle from anybody other than the person they're leasing the vehicle to. . . . for example, someone could rent a truck from Ryder and lease it to Mitchell Brothers, and the Department would consider that person to be an owner-operator for the purposes of the exemption." Board Tr. at 66-67;

(4) Title 46 RCW (Motor Vehicles) defines "owner" as "a person who has a lawful right of possession of a vehicle by reason of obtaining it by purchase, exchange, gift, *lease*, inheritance or legal action whether or not the vehicle is

subject to a security interest." RCW 46.04.380 (emphasis added). Title 46 RCW appears to contemplate lease arrangements, such as that between Mitchell Bros. and lease-operators, as conferring an ownership interest in motor vehicles;

(5) Lastly, we note the judicial construction of "owner" in automobile insurance contracts in which the term is not defined. In *Beatty v. Western Pacific Insurance Co.*, the court determined that the buyer *in possession* was the "owner" of the vehicle even though the seller was the registered owner and sole insurer of the vehicle pending final payment of the purchase price. As such, when the buyer was in an accident while driving the subject vehicle, the injured party could not recover under the seller's insurance policy. *Beatty v. W. Pac. Ins. Co.*, 74 Wn.2d 530, 542, 445 P.2d 325 (1968). Similarly, in *Allstate Insurance Co. v. Neel*, the court held that possession was the dispositive factor in determining "ownership" under an automobile insurance policy that did not define the term. *Allstate Ins. Co. v. Neel*, 25 Wn. App. 722, 725, 612 P.2d 6 (1980). By analogy, lease-operators should be deemed "owners" because they have sole possession of the leased vehicles.

When we examine the relationship, we find that the lease-operators bear all of the responsibilities of an owner and they depreciate the truck and report maintenance expenses for tax purposes. Thus, they use, possess, and enjoy the leased trucks. We note that the legislature has failed to define the term and has left it amorphous. We also note that the Department regards the term in a flexible manner—now deciding that a lessor-operator can qualify as an "owner," so long as he is not leasing back to his lessor. Our conclusion is that there is not a single factor that must be present, *e.g.*, ability to dispose or encumber. Further, when we examine the above reasons and other sources for considering how lease-operators are dealt with in other areas, we are convinced that they should be viewed as "owners" and that Mitchell Bros. should not have to pay premiums.

■ Finally, the Department contends that the lease, lease-back arrangement is, in essence, an illusory arrangement intentionally designed to avoid the industrial insurance requirements of Title 51 RCW.[2] However, the lease arrangements between Mitchell Bros. and the lease-operators do not fall within the proscription of RCW 51.04.060. If the lease-operators are characterized as "owners," then they fall under an exception to the Title 51 RCW insurance requirements. As such, the lease-operators have no benefit to waive by contract or agreement. Also, Mitchell Bros. implemented the lease, lease-back arrangement because of its difficulties in obtaining lease payments from lessees who did not immediately lease the truck back to Mitchell Bros. and in its inability to obtain enough drivers. While the arrangement may have the incidental effect of creating an exception to Title 51 RCW as to lease-operators, evidence shows that this was not the primary intended effect. As we earlier stated, no evidence suggests that Mitchell Bros. intended that this mechanism be an illusory arrangement to thwart taxation; rather, Mitchell Bros. implemented the arrangement to address its problem in obtaining drivers.

Affirmed.

HUNT, C.J., and SEINFELD, J., concur.

---

[2] RCW 51.04.060 provides, "[n]o employer or worker shall exempt himself or herself from the burden or waive the benefits of this title by any contract, agreement, rule or regulation, and any such contract, agreement, rule or regulation shall be pro tanto void."