SIDNEY C. HUTTON ET AL., APPELLANTS, V. VILLAGE OF CAIRO, A MUNICIPAL CORPORATION, IN HALL COUNTY, NEBRASKA, ET AL., APPELLEES.

66 N. W. 2d 820

Filed November 19, 1954. No. 33581.

*Cunningham & Cunningham,* for appellants.

*Louis A. Holmes, Cline, Williams, Wright & Johnson,* and *Richard M. Duxbury,* for appellees.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

SIMMONS, C. J.

This is an action brought to enjoin the defendants from entering into a contract for the installation of a sewer system and from continuing the installation of the proposed system.

The plaintiffs are property owners in the village of Cairo. The defendants are the village, the chairman of the village board, and its clerk. Originally the engineers were named defendants, but they were dismissed from the action and are not parties to this appeal.

Issues were made and trial had, resulting in a denial of the injunction and dismissal of plaintiffs' petition. Plaintiffs appeal. They assign here error in the decree, asserting that the defendants have not complied with the laws in the establishment of the system and generally reach the conclusion that the action of the defendants has been arbitrary and unreasonable.

We affirm the decision of the trial court.

It appears that the defendant village board reached a conclusion favorable to the construction of a sewer

system. They employed an engineer, and after study and consultation on June 23, 1953, passed a resolution of necessity, as required by section 17-913, R. R. S. 1943. Protests by property owners were filed. Some property owners objected to the entire project; others desired that the sewer lines be constructed in the alleys rather than in the streets; and others objected to what is called farm lands being included.

The board met and considered the protests and on July 29, 1953, amended the resolution of necessity and proposed to proceed on that basis.

However, they were advised that some property owners might want to object to alley locations as well as streets, so the board decided to repeal original resolution of necessity, "and make a new one." "We did not go very far with the first one * * *."

On August 18, 1953, the resolution of necessity of July 29, 1953, was repealed. Later on the same day a new resolution of necessity was passed. This was amended on September 15, 1953, as a result of protests.

The village then was proceeding with the project when this action was filed on October 5, 1953.

The first contention of plaintiffs, advanced in argument, is that by changing the boundaries of the district and eliminating substantial parts of the first proposed district, property owners who protested the original plan were thereby disfranchised from their right to protest.

Section 17-914, R. R. S. 1943, gives the right to owners of property to make objections to a proposed improvement where their property might become subject to assessment for the contemplated improvement.

By adopting the new resolution of necessity and the elimination of property from the proposed district, the village disfranchised no one. The right to object is one which is attached to the ownership of property which might become subject to assessment. The right to

object is not one which continues after the property owner interest is no longer involved.

We find here no attempt "to circumvent the intent of the law" but rather what was done was in compliance with the intent of the law. It was not an arbitrary or unreasonable exercise of municipal power.

We see no merit in the contention.

The second resolution of necessity was amended so as to strike certain lateral sewers from the proposed improvement "for the reason that objections have been filed by property owners having a front footage * * *." These deletions are laterals Nos. 4, 5, 16, and 17. The finding in each instance shows that owners of 50 percent or more of "the total front footage" were objecting. The resolution of necessity had set up a description of the "sewer system" consisting of "main and lateral sewers" and the "location, terminal points and size of sewers constituting said system." The location and size of the lateral sewers were set out in 18 numbered descriptions. All were components of the one system. The laterals deleted were short branches delivering to a stem of the sewer system. The plan followed was one which enabled the village board to act favorably upon the objections of the owners of particular areas without destroying the efficiency of the system. The argument here is that the finding of necessity related to the system before deletion of the laterals and hence the amended resolution of necessity was inconsistent with the original one. Section 17-914, R. R. S. 1943, contemplates and authorizes amendments to the resolution of necessity. The argument has no merit.

It is next argued that the boundaries of the areas to be served by the "main sewers" and "lateral sewers" are not shown and that the outer boundaries of any proposed district are not shown on the original or revised plats. The attempt here is to qualify each main and lateral description as a "district."

Section 17-913, R. R. S. 1943, provides that the reso-

lution shall state the outer boundaries of the district or districts in which it is proposed to make special assessments. Section 4 of the resolution begins: "There is hereby created in said Village a sewer district to be known as 'Sanitary Sewer District No. 1', the outer boundaries of which are as follows: * * *." This is followed by a detailed description of the outer boundaries. It meets the requirements of the statute. The argument has no merit.

In the notice to contractors of July 29, 1953, and September 18, 1953, it is stated that the engineer's estimate of cost is $85,000. Section 17-918, R. R. S. 1943, requires the published notice to contractors to state "the amount of the engineer's estimate of the cost of the said improvements." Concededly, material changes were made in the project which, of course, affected the costs of particular items in this project. Plaintiffs point out the difference in the costs and argue that the same total estimate in each instance shows noncompliance with the statute. The breakdown of the estimate of the engineer for the system studied in June shows a total of $84,929.95. The July revised estimate shows $86,017.40 in totals and "FOR ENGINEER'S ESTIMATE USE $85,000.00." The September calculation (which was after the second resolution of necessity was passed) is $80,093.90 for a long list of specific items. It contains no specific engineer's estimate as did the July estimate. The contract was let for $73,113. Whether the last estimate should have been for less than $85,000 need not be decided. No prejudice is shown to property owners.

Finally, it is argued that there is no way at the present time for the plaintiffs to protect themselves against excessive assessments levied against their property or against the general taxpayers. This argument is predicated on the assertion that more than half of the residential and business lots are vacant, which in turn rests on figures contained in a summary found in the engineer's initial report to the village board dated June 12, 1953.

These figures, together with the next statement quoted, appear in a larger exhibit and, as we read the record, were not offered or received in evidence. In any event the figures relate to the situation as it initially existed and not after the deletions of various parts of the project nor as it existed under the second resolution of necessity as amended. The figures were produced under a discussion of several suggested methods of financing the cost of the improvement. In that discussion it is stated: "The worst possible situation as regard bond issue would be where no front footage assessments were made and Village levied a general assessment to pay entire cost of Project." This statement relates to what the cost would be to the village in a bond issue without special assessment "revenues" being considered. Obviously the argument has no fact foundation in this record.

We find no merit in the contentions advanced in this appeal.

The judgment of the trial court is affirmed.

AFFIRMED.