[No. 3329-43096-1.    Division One.    February 2, 1976.]

COMMITTEE OF PROTESTING CITIZENS, ET AL, *Respondents*, v.
VAL VUE SEWER DISTRICT, ET AL, *Appellants*.

*Preston, Thorgrimson, Ellis, Holman & Fletcher, Larry M. Carter*, and *Ronald E. Cox*, for appellants.

*Siderius, Lonergan & Crowley* and *David C. Pearson*, for respondents.

[As amended by order of the Court of Appeals February 10, 1976.]

CALLOW, J.—

*Quaere: Is the real estate contract vendor, the contract vendee, or both, owner of land entitled to protest the formation of a utility local improvement district under RCW 56.20.030?*

We hold that when a real estate contract is of record in the office of the county auditor, only the vendees under the contract are "owners" entitled to protest the formation of a local improvement district under the statute.

On May 7, 1973, the commissioners of the Val Vue Sewer District adopted a resolution declaring their intention to create Utility Local Improvement District (ULID) No. 5

for the purpose of acquiring, constructing and installing sewer system facilities within the boundaries of the sewer district. The commissioners set the required public hearing for May 31, 1973. After notice of the resolution was mailed to property owners, a number of written protests were filed with the secretary of the board by the plaintiffs and other residents of the district. At the meeting on May 31 and afterward during the summer of 1973, the plaintiffs contended that the board had no jurisdiction to proceed with the project because owners of 40 percent of the land area within ULID No. 5 had filed protests prior to the meeting. These protests had been filed under the provision of RCW 56.20.030, which states in part:

> *Provided,* That the jurisdiction of the commissioners to proceed with any improvement initiated by resolution shall be divested: (a) by protests filed with the secretary of the board prior to said public hearing signed by the owners, according to the records of the county auditor, of at least forty percent of the area of land within the proposed local district  .  .  .

The consulting engineers for the district calculated the area of land represented by the protesting parties to be 38.7 percent of the area of land within ULID No. 5, and the commissioners, concluding that they had legal power to proceed, adopted the resolution creating ULID No. 5, establishing the boundaries thereof, and ordering the acquisition, construction, and installation of the sewer improvements therein.

This suit for permanent injunction was filed to halt the commissioners from proceeding. The issue presented is: Should only protests filed by contract vendors of property within a district be counted, should only those filed by contract vendees be counted, or should both contract vendors and vendees be permitted to file protests against the creation of a utility local improvement district. The issue was considered first by one judge upon motion and by another judge on trial. The cause was presented to us on the final ruling which precluded the defendant commissioners from proceeding with the improvement.

■ A long trail of cases since *Ashford v. Reese*, 132 Wash. 649, 233 P. 29 (1925), has established the respective positions of the vendor and purchaser under a real estate contract in this state. The vendor's interest under an executory real estate contract is considered to be personal property while the purchaser's interest is considered an interest in the land. When an owner of real property enters into an executory contract for the sale of the land and the purchaser enters into possession, the interest that remains to the seller is personal property and the seller's right is to payment under the contract. The vendor then holds the legal title in trust for the benefit of the purchaser and is under an obligation to convey that title when the contract has been fulfilled. *Meltzer v. Wendell-West*, 7 Wn. App. 90, 497 P.2d 1348 (1972), and cases cited therein.

*Harder v. Springfield*, 192 Ore. 676, 236 P.2d 432 (1951), held that vendees in possession of real property under a real estate contract were the property owners to be benefited by the creation of a local improvement district and therefore had the exclusive right to protest under the protest provisions of a similar local improvement statute. The opinion cited 2 J. Pomeroy, *Equity Jurisprudence* § 368 (5th ed. 1941), which states that: (a) the vendor holds the legal title as a trustee for the vendee; (b) the vendor has a lien on the land, even though the vendee is in possession, as security for any unpaid portion of the purchase money; (c) the vendee is looked upon and treated as the owner of the land; (d) an equitable estate commensurate with that provided for by the contract vests in the vendee; and (e) the beneficial interests in the land pass to the vendee. Pomeroy is quoted for the proposition that " *in short, all the incidents of a real ownership belong to* [the vendee].' " *Harder v. Springfield, supra* at 687. The Oregon opinion also relied upon the article in American Jurisprudence on Special or Local Assessments. The pertinent portion in the article is now found in 70 Am. Jur. 2d *Special or Local Assessments* § 141 (1973), which states in part:

A vendee in possession under a valid contract to pur-

chase has been regarded as the owner for the purpose of remonstrating against a special or local assessment. One having an equitable title to property as a purchaser thereof, who has paid a portion of the purchase price, is the owner thereof within the meaning of a statute providing for the filing of a protest against the letting of a contract for an improvement.

(Footnotes omitted.) The Oregon court concluded, holding that "vendees in possession under a land sale contract are 'property owners benefited' and . . . their respective vendors are not 'property owners benefited' within the meaning of [the protest provisions]." *Harder v. Springfield,* 192 Ore. 676, 690, 236 P.2d 432, 438 (1951). Therefore, it was held that the vendee in possession under a land sale contract is the proper party to protest against the creation of a utility local improvement district, and the vendor is not.

*Shaw v. Goben,* 167 Mo. App. 125, 126, 151 S.W. 209, 210 (1912), likewise concluded that the purchaser is the true participant in the affairs and future of the land, stating:

The evidence showed that [a protester] . . . had a contract for the property and had taken possession and was living thereon and had paid . . . part payment of the purchase price . . . We think him a property owner and that he was properly counted as such . . . He was the equitable owner and could have compelled the execution of a deed upon tender of balance of purchase money.

(Citation omitted.)

The Washington statutes contemplate that only those who are owners of record shall be granted the right to protest the formation of a district. The right to remonstrate ceases when one's interest as the property owner is gone. *Hutton v. Cairo,* 159 Neb. 342, 66 N.W.2d 820 (1954). The protesters must be those affected by the proposed improvement and must be owners according to the records of the office of the county auditor. RCW 56.20.010, .020, and .030. *See also* 13 E. McQuillin, *Municipal Corporations* § 37.53 (3d ed. 1971).

We will not read into the statutes a complication that would place an ownership of the right to protest in both the vendor and the vendee. *See In re Catfish River Drainage Dist.*, 176 Wis. 607, 187 N.W. 673 (1922); *Evans-Lee Co. v. Hoton*, 190 Wis. 207, 208 N.W. 872 (1926). As we have observed, under Washington law the vendee possesses the beneficial interest and real ownership in the land, and the vendor retains only a security under the contract which is looked upon as personal property rather than as an interest in the land.

We have discussed the issue presented because of its continuing and substantial public interest. *Hartman v. State Game Comm'n*, 85 Wn.2d 176, 532 P.2d 614 (1975); *Sorenson v. Bellingham*, 80 Wn.2d 547, 496 P.2d 512 (1972). The other issues raised by the appeal are now moot and need not be discussed. Each party shall bear its respective costs and attorney's fees on appeal. There is no further intention to proceed with the creation of ULID No. 5. For that reason only, the entry of the permanent injunction is affirmed.

FARRIS and JAMES, JJ., concur.