Argued and submitted May 3, reversed and remanded in part; otherwise affirmed
October 16, 2002

WESTERN EQUITIES, INC.,
an Oregon corporation;
and Randy Smith,
*Appellants,*

*v.*

ST. PAUL FIRE AND MARINE
INSURANCE COMPANY,
*Respondent.*

9801-00427; A107482

56 P3d 431

Michael A. Cox argued the cause and filed the briefs for appellants.

Lisa E. Lear argued the cause for respondent. With her on the brief were Nickolas J. Dibert and Bullivant Houser Bailey, PC.

Before Edmonds, Presiding Judge, and Kistler and Schuman, Judges.

KISTLER, J.

## KISTLER, J.

This is an action for defense costs and indemnification brought by Randy Smith and his employer, Western Equities, Inc., against their insurer, St. Paul Fire and Marine Insurance Company. Smith and Western Equities were sued for breach of fiduciary duty and misrepresentation arising out of a transaction in which Smith agreed to purchase a piece of property and then assigned his interest in the property to a third party. Smith and Western Equities tendered the complaint in the underlying action to defendant, which refused to defend or indemnify them, prompting them to file this lawsuit. In this action, the trial court agreed with defendant that it had no duty to defend or indemnify Smith and Western Equities and entered judgment in defendant's favor. We affirm as to Smith and reverse as to Western Equities.

■ Because we analyze the duty to defend based solely on the facts alleged in the underlying complaint, we set out those facts first.[1] David and Marsha Hanson owned a 48-unit apartment complex in Wood Village, Oregon. Western Equities employed Randy Smith as a licensed real estate broker. In November 1995, Smith, through his company Evergreen Properties, entered into an earnest money agreement with the Hansons for the purchase and sale of their apartment complex. Pursuant to the terms of that agreement, Smith was acting as a broker for the buyer and the seller. Smith entered into the earnest money agreement with the intention of transferring his interest in the agreement to Bright Ridge LLC, a limited liability company to which Smith had recruited several of the members and in which he indirectly held an interest. In March 1996, approximately four months after Smith and Evergreen entered into the earnest money agreement, Smith, acting through Evergreen, assigned his interest in the agreement to Bright Ridge LLC.

---

[1] Both parties assume that we should consider the initial complaint and the two amended complaints in deciding defendant's duty to defend. However, at the time that Smith tendered the defense, only the first complaint had been filed. Therefore, the first complaint is the only one that we consider in determining whether defendant had a duty to defend plaintiffs. *Oregon Insurance Guaranty Assoc. v. Thompson*, 93 Or App 5, 10, 760 P2d 890 (1988), *rev den*, 307 Or 303 (1989).

Shortly afterward, Bright Ridge LLC filed suit against Smith, Western Equities, and the Hansons, alleging breach of fiduciary duty, breach of warranty, and misrepresentation. Smith and Western Equities tendered the complaint to defendant, which rejected the tender in part on the ground that the action was excluded from coverage under the "owned property" exclusion. Smith and Western Equities eventually settled the action against them for $11,400, a release of Smith's $15,000 claim against Bright Ridge LLC, and a transfer of Smith's rights in various properties to Bright Ridge LLC.

Smith and Western Equities then filed this action against defendant, alleging that it had breached its contractual duty to defend and indemnify them. After a trial on stipulated facts, the trial court concluded that the claims brought against Smith and Western Equities fell within the owned property exclusion. The court accordingly ruled that defendant did not have a duty to defend or indemnify either Smith or Western Equities.

Both Smith and Western Equities appeal, arguing that defendant had a duty to defend and also to indemnify each of them. We begin with the duty to defend. Whether an insurer has a duty to defend is contingent upon two documents: the complaint and the insurance policy. *Ledford v. Gutoski*, 319 Or 397, 399, 877 P2d 80 (1994). An insurer has a duty to defend an insured only "if certain allegations of the complaint, without amendment, could impose liability for conduct covered by the policy." *Id.* at 400. In determining whether the insurer has a duty to defend, we look exclusively at the facts alleged in the complaint in the underlying action. *Id.* If the complaint is ambiguous with respect to whether the allegations are covered by the insurance policy, we resolve that ambiguity in favor of the insured. *Id.*

Defendant argues that it had no duty to defend Smith because his actions came within the owned property exclusion in the policy. That exclusion provides, in part:

"We won't cover loss * * * that results from a protected person listing, selling, managing, appraising, or auctioning real estate in which the same protected person has more than a 10% financial or ownership interest."

Defendant argues that, once the earnest money agreement was signed, Smith held at least a 10 percent interest in the apartment complex and that he sold that interest when he assigned his rights and obligations under the earnest money agreement to Bright Ridge LLC. Defendant concludes that, under the allegations in the complaint, Smith fell squarely within the exclusion. Smith in turn argues that assigning his interest in the property to Bright Ridge LLC did not constitute a sale and that, even if it did, an equitable interest in real estate is not a "financial or ownership interest" within the meaning of the exclusion. For each of those reasons, Smith argues, the exclusion does not apply.

■ We begin with the question whether the assignment to Bright Ridge LLC constituted a sale within the meaning of the policy. Focusing on the word "selling" in the exclusion, the parties debate whether an assignment constitutes a sale. The insurance policy does not define the term selling. Both parties agree, however, that the language in the policy should be given its common and ordinary meaning, *see Totten v. New York Life Ins. Co.*, 298 Or 765, 696 P2d 1082 (1985), and both parties urge us to adopt similar definitions of the word sell. Each argues that "sell" includes an exchange for value. We accept their definition for the purposes of resolving this case.

Having identified the meaning of the term, we turn to the complaint in the underlying action and determine whether, under the facts alleged in the complaint, it can be said that Smith received something of value when he assigned his interest in the agreement to Bright Ridge LLC. On that point, defendant argues that, once the parties entered into the earnest money agreement, Smith was obligated to pay the Hansons $1,575,000 when the sale closed. By assigning his interest in the agreement to Bright Ridge LLC, defendant argues, Smith exchanged his interest in the property in return for Bright Ridge's assumption of his obligation to pay the Hansons. We agree with defendant that Bright Ridge's assumption of Smith's obligation was of value to Smith and that he received it in exchange for transferring

his interest in the property to Bright Ridge LLC. The assignment constitutes a sale under the parties' agreed-upon definition of that term.[2]

■ In the alternative, Smith argues that, even if he did exchange something for value, he had only equitable title to the property when he signed the earnest money agreement. Because he did not hold legal title to the property, he argues he did not have a sufficient interest in the property. Smith's argument is at odds with Oregon law, which provides:

> "[A]t the time of an agreement to sell real property, the purchaser of the real property is deemed to be the owner thereof, and the seller becomes entitled to receive payment of the purchase price."

*Ernst Brothers Corp. v. Dept. of Rev.*, 320 Or 294, 303, 882 P2d 591 (1994); *Panushka v. Panushka*, 221 Or 145, 149, 349 P2d 450 (1960). Moreover, the owned property policy exclusion applies when the real estate agent "has more than a 10% *financial* or ownership interest" in the real estate. (Emphasis added.) Smith had a financial interest in the property even though he only had equitable title to the property. We agree with the trial court that, because Smith's actions came within the owned property exclusion, defendant had no duty to defend him.[3]

■ The question whether defendant had a duty to defend Western Equities presents a different question. As

---

[2] Smith relies on an unreported federal district court case for the proposition that a limited class of assignments does not constitute a sale within the meaning of the owned property exclusion. *See VASA North Atlantic Ins. Co. v. Golden Eagle Ins. Co.*, 1994 WL 285027. In that case, the realtor took title to the insured's property for 24 hours in order to effectuate a tax-exempt exchange of that property for another parcel of property that the insured was buying from the broker and then assigned his interest in the property to the ultimate buyer. The court held that such limited, technical ownership did not come within the owned property exclusion. We need not decide whether we agree with the federal district court's conclusion. Nothing in the underlying complaint suggests that the sort of limited, technical ownership that the federal district court found decisive in *VASA North Atlantic Ins. Co.* occurred here.

[3] Smith argues that, even if the transaction came within the owned property exclusion, it also came within an exception to that exclusion for guaranteed listing agreements. Smith, however, did not raise that issue below, and we decline to consider it.

noted, the owned property exclusion applies to "a protected person * * * selling * * * real estate in which the same protected person has more than a 10% financial or ownership interest." By its terms, the exclusion is limited to the person who holds a financial or ownership interest in the real estate. The complaint, however, does not allege that Western Equities had any financial or ownership interest in the apartment complex. The complaint alleges only that Western Equities employed Randy Smith. Measured against the allegations in the underlying complaint, the owned property exclusion does not apply to Western Equities.[4] Defendant does not argue that any other exclusion applies to Western Equities,[5] nor does it advance any other reason for saying that its policy did not cover Western Equities' losses. We accordingly reverse the trial court's decision that defendant was not required to defend Western Equities.

 The remaining question is whether defendant had a duty to indemnify either Western Equities or Smith. The duty to indemnify is independent of the duty to defend; the facts proved at trial may give rise to a duty to indemnify if they demonstrate that the insured's conduct is covered. *Ledford*, 319 Or at 403. The duty to indemnify is established by proof of facts demonstrating a right to coverage. *Northwest Pump v. American States Ins. Co.*, 144 Or App 222, 227, 925 P2d 1241 (1996). Defendant again raises the owned property exclusion and, as a result, we must determine whether the evidence at trial supported defendant's contention that Western Equities or Smith was engaged in selling real estate

---

[4] Defendant argues that the policy excludes coverage for any loss that results from a transaction in which a protected person holding more than a 10 percent financial or ownership interest in property sells it. It follows, defendant reasons, that all coverage for the loss is excluded as long as any person protected by the policy, *i.e.* Smith, falls within the owned property exclusion. Even if that were a permissible reading of the policy, the exclusion is at best ambiguous as to whether it is limited to the protected person who sells the property, as Western Equities argues, or applies to all protected persons, as defendant argues. The remainder of the policy does not resolve that ambiguity, and, because we construe an ambiguity against the drafter, we do not adopt defendant's interpretation. *See Hoffman Construction Co. v. Fred S. James & Co.*, 313 Or 464, 470, 836 P2d 703 (1992).

[5] Although defendant argues that another exclusion, the promoter exclusion, applies to Smith, it does not argue that that exclusion also applies to Western Equities. We accordingly do not consider that issue on either the duty to defend or the duty to indemnify. *State v. Montez*, 309 Or 564, 604, 789 P2d 1352 (1990).

in which either had an ownership interest. More specifically, we cannot set aside the trial court's judgment unless we can affirmatively say that there is no evidence from which it could have found the facts necessary to support its judgment. *Brown v. J. C. Penney Co.*, 297 Or 695, 705, 688 P2d 811 (1984).

The evidence at trial revealed the following facts: Smith is a real estate agent and broker, employed by Western Equities. In 1995, Smith entered into a Marketing Service Agreement with Dave and Marsha Hanson, who at that time owned the apartment complex. After several offers on the property fell through, Smith and Bud Leighton, a business associate of Smith's, came up with the idea of organizing a group of investors to make an offer to purchase the apartments. The two ultimately decided to form a limited liability company that would purchase the property. This idea was presented to the sellers and, in November 1995, Smith, doing business as Evergreen Properties, entered into a sale agreement and receipt for earnest money for the purchase of the apartment complex. Pursuant to the terms of that agreement, the deed for the property was to be prepared in the name of a limited liability company that would be formed before closing. The buyer's title was listed as "Evergreen Properties and/or Assigns."

Several other investors became interested in the property after Smith entered into the earnest money agreement—investors who would form Bright Ridge LLC, the limited liability company that ultimately purchased the apartment complex. In March 1996, Smith, doing business as Evergreen Properties, assigned his interest in the Sale Agreement to the investors who would form Bright Ridge LLC. Later, an inspection was performed and various negotiations followed. In April 1996, title to the apartment complex was transferred to Bright Ridge LLC.

Sometime after the property had been transferred, members of Bright Ridge LLC became unhappy with Smith's handling of the transaction. In particular, they were displeased that he had represented both the sellers and the investors in the transaction and that a more thorough inspection of the property had not been done. Bright Ridge LLC

brought this action against Smith and Western Equities, alleging breach of fiduciary duty and misrepresentation. Based on that evidence, the trial court found that both Smith and Western Equities came within the owned property exclusion.

We note initially that no evidence was adduced at trial that suggests that Western Equities was engaged in a sale of real estate in which it had an ownership interest: The facts do not show that Western Equities either owned the property or exchanged anything of value for it. We may reverse a trial court's judgment only if there is no evidence in the record to support its factual findings. *Brown*, 297 Or at 705. There is no evidence here. We accordingly reverse the trial court's decision that defendant was not required to indemnify Western Equities.

As to Smith, the evidence at trial provides further support for our earlier conclusion that, in light of the complaint, there were sufficient facts to support defendant's invocation of the owned property exclusion. Smith, through Evergreen Properties, entered into the earnest money agreement and, once he created a limited liability corporation to take over ownership, assigned his interest in the sale to the company itself. The trial court reasonably could find that the assignment was a way of selling various interests in a piece of property to people forming the limited liability company. In addition, after signing the agreement, Smith recruited several new members into the limited liability company and, in effect, sold an interest in the property to them. Because the trial court reasonably could find that Smith sold real estate in which he held more than a 10 percent financial or ownership interest, defendant had no duty to indemnify him.

Reversed and remanded as to Western Equities, Inc.; otherwise affirmed.