88 P.3d 986 (2004)
STATE FARM FIRE & CASUALTY COMPANY, an Illinois corporation, Appellant,
v.
ENGLISH COVE ASSOCIATION, INC., a Washington corporation; Douglass C. Reiss; W. Dean Weidner; and English Cove Condominium Association, Respondents.
No. 51750-3-I.
Court of Appeals of Washington, Division 1.
April 26, 2004.
As Amended June 8, 2004.
*988 David Bradley Merchant, Barker Martin & Merchant PS, Seattle, WA, for Amicus Curiae Washington Homeowners.
A. Richard Dykstra, J. William Ashbaugh, Seattle, WA, for Respondent.
Pamela A. Okano, Michael Simpson Rogers, Seattle, WA, for Appellants.
*987 COX, C.J.
An "owned property" exclusion is intended to prevent a general liability policy from providing first-party benefits to the insured.[1] The comprehensive business liability policy at issue here excludes from coverage damage to "property you own, rent, or occupy." Because English Cove Associates, Inc. (ECA), the insured, has an undivided ownership interest in the damaged property, and the word "own" is not ambiguous in this context, the policy exclusion applies. Accordingly, we reverse the summary judgment order in favor of the insured and remand with directions for further proceedings consistent with this opinion.
ECA developed a substantial condominium project in Redmond, Washington called English Cove. During development, ECA purchased three successive insurance policies from State Farm Fire & Casualty Company. All of the policies contain a comprehensive business liability provision. The provision contains a standard insuring provision. It also contains a standard exclusion for "property damage" to property the insured "owns, rents, or occupies."
During the marketing of the project, ECA retained ownership of the individual condominium units until they were sold to buyers. As of the date of expiration of the last State Farm policy, the one at issue in this case, ECA owned 43 of the 160 units at English Cove. By virtue of its ownership of these units, ECA also had an undivided interest in the common areas of the condominium.
In March 2000, the English Cove Condominium Association, an association of owners of the condominium units and common areas, sued ECA and others, alleging breaches of both contract and various warranties. It also claimed that ECA violated the state Consumer Protection Act. The claims were based on numerous alleged construction defects. The association claimed the defects permitted water to intrude into and through the outer walls of the condominium's buildings. The vast majority of the association's complaints centered on physical damage within the outer walls of the buildings of the condominium, characterized in the record as "common elements."[2]
ECA tendered defense of the lawsuit to State Farm. State Farm defended under a reservation of rights, citing exclusions that could justify denial of coverage. ECA subsequently settled the construction defects suit with the association and looks to the State Farm policy for indemnity coverage.
State Farm commenced this declaratory judgment action to obtain a decision whether the "owned property" policy exclusion bars coverage under its policy with ECA. The parties made cross motions for summary judgment. The trial court granted ECA's motion and denied State Farm's.
State Farm appeals.

Owned Property Exclusion
State Farm argues that ECA owns the common elements of the property because it holds an undivided ownership interest in those elements.[3] State Farm notes that ECA has the right to convey common elements together with units when sold. Further, State Farm argues that owns is not ambiguous, particularly in the context of condominiums. We hold that ECA owns the common elements as the holder of an undivided interest in them. Moreover, owns is not ambiguous in this context.
*989 The standard of review of an order of summary judgment is de novo.[4] The proper interpretation of an insurance policy is a question of law that we review de novo.[5] We will give a policy a fair, reasonable and sensible construction as would be given by the average person purchasing insurance.[6] At the same time, insurance is a contract. Thus, "[t]he unexpressed intention of one party is meaningless as to the mutual intention of the parties."[7]
We give undefined terms in a policy their popular and ordinary meaning,[8] turning to dictionaries if the plain meaning of the term is not clear.[9] An insurance policy provision is ambiguous when it is fairly susceptible to two different interpretations, both of which are reasonable.[10] If we cannot resolve an ambiguity by resort to extrinsic evidence, we will apply the rule that ambiguities in insurance contracts are construed in favor of the insured.[11]
If the plain language of the policy does not provide coverage, we will not rewrite the policy to do so.[12] We consider exclusions in insurance policies given the purpose for which they are inserted.[13]
To prevail, ECA must first establish that the loss falls within the scope of the policy's insured losses.[14] Neither party contests that the loss falls within the insuring terms of the policy.[15] To avoid responsibility for the loss, the insurer must then show that the loss is excluded by specific language in the policy.[16] The dispute here is over the owned property exclusion.
Here, the parties concede there are no genuine issues of material fact. We agree. Thus, the question we must decide is whether either party is entitled to a judgment as a matter of law under the owned property exclusion of the policy.
The exclusion states:
"[T]his insurance does not apply: ... `to property damage to: a. property you own, rent or occupy....'"[17]
"You" is defined as the named insured, ECA.[18]
Own is not defined in the policy. Thus, we look first to the dictionary definition. Websters Third New International Dictionary defines own as To have or hold as property or appurtenance: have a rightful title to, whether legal or natural: Possess.[19] The *990 American Heritage Dictionary defines own 1a. To have or possess as property: owns a chain of restaurants.[20]
Washington courts have identified the chief incidents of ownership of property as the right to its possession, use and enjoyment, and to sell or otherwise dispose of it according to the will of the owner.[21] Likewise, ownership in realty is not diminished because others also have an interest in the realty at issue. For example, in Committee of Protesting Citizens v. Val Vue Sewer Dist.,[22] this court held that the purchasers, not the sellers, under real estate contracts within a proposed local improvement district were "property owners benefited" within the meaning of statutes at issue in that case.[23] This was so although both sellers and purchasers under real estate contracts for the same properties held different interests in the properties.[24]
Both the dictionary definitions of own and Washington case authority addressing the same question support the conclusion that own includes an undivided interest in property that entitles one to sell or otherwise dispose of that property as one chooses. Neither the dictionary nor the cases supports the view that own requires the right to exclusive possession of the property in question.
These general principles are reflected in the nature of the ownership of condominiums that is at the heart of this case. RCW 64.34.020(9), the statute governing the creation of condominiums, states:

Condominium means real property, portions of which are designated for separate ownership and the remainder of which is designated for common ownership solely by the owners of those portions. Real property is not a condominium unless the undivided interests in the common elements are vested in the unit owners,....[25]
RCW 64.34.020(6) provides: "`Common elements' means all portions of a condominium other than the units."[26]
Consistent with these and related statutes, the declaration that ECA prepared when it developed English Cove expressly defines "unit," "unit owner," and "common elements."[27] These definitions, of which both ECA as well as those who purchased condominium units from ECA are presumably aware by virtue of recording of the declaration, are consistent with the above condominium statutes.[28]
Notwithstanding the above considerations, ECA argues that it, as a mere unit owner, does not own the common elementsthe area within the outer walls of the buildings at issue because it has neither the "incidents" nor "fundamental attributes" of ownership. A plain reading of the dictionary, the condominium statute, the declaration, and Washington *991 case authority disproves this remarkable argument.
As the unit owner of 43 of the 160 units, ECA owns those units. The unit, by definition, includes "the interior surfaces of the exterior walls lowest floor and the highest ceiling of the unit." Each unit owner also holds an undivided interest in the common elements associated with each unit. Those common elements include the area where the damage to the buildings apparently occurred here. ECA fails to present any persuasive authority to support its argument that either exclusive right to possession or 100 percent ownership of the common elements where the damage occurred is required to establish its ownership of this property.
ECA next claims that the word "own" is ambiguous. Specifically, it claims that if State Farm meant to exclude from coverage property that the insured "co-owned" or "owned in whole or in part," it should have so stated in the policy rather than just relying on the word "own." Pointing to other exclusionary language in the policythat for faulty work or maintenance "of part or all of any property"ECA argues that State Farm knows how to craft language that would limit or extend the definition of "own." ECA argues that an insurance policy provision is ambiguous when it is fairly susceptible to two different interpretations, both of which are reasonable.[29]
Just because State Farm could have further clarified or expressly defined the term in the manner that ECA asserts, does not make "own" ambiguous.[30] Rather, we conclude that the word includes the undivided ownership interest in the common elements of the condominium and is not fairly susceptible to two reasonable interpretations in this context.[31]
The Washington Court of Appeals in Farmers Ins. v. USF & G Cas. & Sur. Co.,[32] concluded that the word `owner' is ambiguous and the average person may assign it to a wide variety of connotations other than the technical one. In spite of this statement in that case, ownership in the context of condominiums and this policy is not ambiguous. Thus, ECA misplaces its reliance on that case. While an insured condominium owner reading this exclusion in the policy may not fully grasp the legal concept of undivided ownership, such an insured would understand that the exclusion applies to common elementswhether such elements are the recreation room of the condominium, its hallways or the damaged property in this case. The condominium owner owns and must convey at sale both the unit and the common elements, notwithstanding the latter is held as an undivided interest.
ECA cites Kelly v. Aetna Cas. Sur. Co.,[33] an automobile insurance case, for the proposition that when a person has a complete lack of control over an insured automobile, or fails to hold any "indicia of ownership" in the auto, he is not an "owner." Kelly is not helpful.
Here, ECA has indicia of ownership by virtue of its interests in the units and the common elements of the condominium. It has the right to possess its units and the right to sell its units and the associated common elements.[34] We reject as unpersuasive the argument that ECA is not an owner because it does not have indicia of ownership of the common elements. It clearly does. There is no support for ECA's contention that exclusive possession of the common elements is necessary for ownership.
*992 Claiming that a builder typically purchases general liability insurance to protect itself from liability resulting from its construction activities, ECA argues that our interpretation of the owned property exclusion vitiates the fundamental purpose of the policy before us. We disagree.
Third party insurance provides protection for the policyholder for liability it incurs to someone else, while first party insurance provides protection for losses to the policyholder's own property.[35] An owned property exclusion prevents a CGL policy from providing first-party benefits to the insured.[36] Thus, the exclusion bars coverage to the extent of losses to the insured's own property. There are no first party benefits under a policy with such an exclusion.
Here, ECA is seeking indemnity for damage to property in which it has an undivided ownership interestcommon elements of the condominium. Thus, the purpose of such an exclusion is served in this case.
ECA points out that a typical developer purchases realty, constructs condominiums on that property, and holds title to the units until they are sold to individuals. This process may take several years. Noting that a developer retains ownership of unsold units over an extended period while it reduces its inventory of units, ECA argues that it is illogical to conclude that the owned property exclusion should apply throughout this entire periodwhether a developer owns 99 units or just one.
But that is precisely how the exclusion at issue here works. Application of the exclusion depends on ownership, not on how long that ownership exists or the percentage of ownership.
ECA argues Aetna Insurance Co. v. Aaron[37] provides guidance regarding ECA's situation. It does not. The case provides no helpful analysis of the "owned property" exclusion. As we have discussed above, Washington statutes and case law provide the most helpful analysis in interpreting the owned property exclusion that is at issue here.
Because of our resolution of the issues on the basis of the above authorities, we need not address First Londonderry Develop. Corp. v. CNA Ins. Cos.,[38] on which State Farm relies.
We hold that the word "own" in the owned property exclusion at issue in this case is not ambiguous and bars coverage to the extent of ECA's ownership interest in the damaged common elements of the condominium.

Allocation
The next issue we must decide is whether and to what extent there should be an allocation of loss assuming the exclusion applies to the common elements. Because of the trial court's resolution of the case below, it did not reach this question.
ECA cites P.U.D. 1 v. International Insurance[39] for the proposition that where the same "factual core" underlies a claim involving covered and non-covered elements, an insurer may not allocate coverage. Specifically, ECA claims that the same core of factswater invading the outer walls of the buildingsdamaged both its interest as well as the interests of the other unit owners. ECA argues that since the factual core of the damage is the same, coverage may not be allocated. We disagree.
In P.U.D., damages arose from a bond default resulting from the abandonment of power plant construction. In that case, the supreme court considered whether the trial court erred when it failed to instruct the jury that it must allocate the settlement between covered and non-covered claims. The two theories of liability presented were negligence *993 (covered), and intentional acts performed by the board (not covered).
The defendant liability insurer argued that the jury should be instructed to allow for allocation of the loss and pay out settlement only for actions that were covered under the policy. Though the damages arose from the same factual core, the resulting bond default was an indivisible damage. There were no feasible means to allocate damages in those circumstances.
That case does not control this situation. Rather, the better argument is supported by Waite v. Aetna Cas. & Sur. Co.[40] That court held that allocation is allowable when there is a reasonable means of allocating between covered and noncovered losses.[41] Here, there is at least one such reasonable basis.
As we understand the record before us, no one disputes that both ECA and the other owners of the damaged common elements hold undivided interests in those elements. It is unclear to this court whether there is insurance coverage for unit owners other than ECA for the loss at issue. But for purposes of our decision, we need not decide that point.
Although the factual core of the damage to the common elements is the same for each condominium unit, there is at least one reasonable means here to allocate lossthe ratio of ECA's ownership of the common elements to total ownership of those elements defines the extent to which the exclusion in the policy before us bars recovery by ECA. That does not exclude the possibility that there may be other reasonable means for allocation. The example we use here is not intended to limit the trial court's consideration of this issue on remand.
State Farm contends that because ECA "owned" 43 of 160 units and that ratio determines the ownership of the common elements, the damage to the common elements should be controlled by that ratio. While we agree that this approach appears to be a reasonable means to allocate the loss, we do not wish to preclude the trial court's consideration and determination of this question. Accordingly, we remand that question to the trial court for consideration and decision.
To summarize, the owned property exclusion in this policy is not ambiguous. As it operates here, it applies to bar coverage to the extent of ECA's undivided ownership of the common elements of the condominium. We have discussed at least one reasonable basis for allocation of the loss between damage that is covered and that which is not. On remand, the trial court should determine the basis of allocation of loss.
We reverse the summary judgment order in favor of ECA and remand for further proceedings consistent with this opinion.
BAKER and SCHINDLER, JJ., concur.
NOTES
[1] Olds-Olympic, Inc. v. Commercial Union Ins. Co., 129 Wash.2d 464, 478, 918 P.2d 923 (1996).
[2] Clerk's Papers at 414.
[3] In re Wegley's Estate, 65 Wash.2d 689, 694, 399 P.2d 326 (1965) (setting aside a decree of distribution that allowed for decedent's widow to elect to receive proceeds from the sale of a particular half of a single parcel of condemned real property instead of receiving an undivided half interest in the proceeds from the whole property).
[4] Jones v. Allstate Ins. Co., 146 Wash.2d 291, 300, 45 P.3d 1068 (2002).
[5] McDonald v. State Farm Fire Cas. Co., 119 Wash.2d 724, 730-31, 837 P.2d 1000 (1992).
[6] Roller v. Stonewall Ins. Co., 115 Wash.2d 679, 682, 801 P.2d 207 (1990) (citations omitted).
[7] American States Ins. Co. v. Breesnee, 49 Wash. App. 642, 646, 745 P.2d 518 (1987) (citation omitted).
[8] Roller, 115 Wash.2d at 684-85, 801 P.2d 207.
[9] Boeing Co. v. Aetna Cas. Sur. Co., 113 Wash.2d 869, 877, 784 P.2d 507 (1990).
[10] Lynott v. National Union Fire Ins. Co. of Pittsburgh, Pa., 123 Wash.2d 678, 690, 871 P.2d 146 (1994).
[11] Weyerhaeuser Co. v. Aetna Cas. and Sur. Co., 123 Wash.2d 891, 897, 874 P.2d 142 (1994).
[12] Grange Ins. Co. v. Brosseau, 113 Wash.2d 91, 100, 776 P.2d 123 (1989).
[13] Olds-Olympic, 129 Wash.2d at 478-79, 918 P.2d 923 (stating that "An owned property exclusion prevents a CGL policy from providing first-party benefits to the insured.") (citing Tod I. Zuckerman and Mark C. Raskoff, Environmental Insurance Litigation § 7.02, at 7-4 (Supp.1994)).
[14] McDonald, 119 Wash.2d at 731, 837 P.2d 1000.
[15] The insuring provision common to all policies states: We will pay those sums that the insured becomes legally obligated to pay as damages because of bodily injury, property damage, personal injury or advertising injury to which this insurance applies.
[16] Diamaco, Inc. v. Aetna Cas. & Sur. Co., 97 Wash.App. 335, 337, 983 P.2d 707 (1999), review denied, 140 Wash.2d 1013, 5 P.3d 8 (2000) (citations omitted).
[17] Clerk's Papers at 396, 398 (emphasis added).
[18] Clerk's Papers at 134.
[19] Websters Third New International Dictionary 1612 (1969); Allstate Ins. Co. v. Neel, 25 Wash. App. 722, 725, 612 P.2d 6 (1980) (using the dictionary definition in insurance context).
[20] The American Heritage Dictionary 1294 (3rd ed.1992).
[21] Wasser & Winters Co. v. Jefferson County, 84 Wash.2d 597, 599, 528 P.2d 471 (1974) (citations omitted).
[22] 14 Wash.App. 838, 545 P.2d 42 (1976).
[23] Val Vue Sewer Dist., 14 Wash.App. at 841, 545 P.2d 42.
[24] Val Vue Sewer Dist., 14 Wash.App. at 840-41, 545 P.2d 42.
[25] (Emphasis added.)
[26] (Emphasis added.)
[27] ECA's Declaration states: "common elements" mean all portions of the Condominium other than the units.

"Unit" means the part of the property intended for residential use and occupancy. All the space, building(s) and improvements located within the boundaries of a unit shall constitute that unit. The boundaries of each unit shall be the interior surfaces of the exterior walls lowest floor and the highest ceiling within the unit. (emphasis added).
"Unit owner" means a Declarant or other person who owns a unit, but does not include a person who has an interest in a unit solely as security for an obligation or debt. "Unit owner" means the vendee, not the vendor of a unit under a real estate contract.
[28] See One Pacific Towers Homeowners' Ass'n v. HAL Real Estate Investments, Inc., 148 Wash.2d 319, 328, 61 P.3d 1094 (2002) (The "recordation requirement is important to determine the duration of the period of declarant control pursuant to RCW 64.34.308(4), as well as to place unit owners on notice of all persons entitled to exercise the special rights of a declarant under this Act. In addition, the declarant or successor declarant must furnish a copy of the recorded instrument to all unit owners.").
[29] Smith v. Continental Casualty Co., 128 Wash.2d 73, 81, 904 P.2d 749 (1995) (citing American Star Ins. Co. v. Grice, 121 Wash.2d 869, 874, 854 P.2d 622 (1993), opinion supplemented, 123 Wash.2d 131, 865 P.2d 507 (1994)).
[30] Cf. Western Equities, Inc. v. St. Paul Fire and Marine Ins. Co., 184 Or.App. 368, 56 P.3d 431 (2002) (defining "owned property" as requiring ownership of more than a 10 percent financial or ownership interest involving an "owned property" exclusion).
[31] Smith, 128 Wash.2d at 82, 904 P.2d 749.
[32] 13 Wash.App. 836, 841-42, 537 P.2d 839 (1975).
[33] 100 Wash.2d 401, 670 P.2d 267 (1983).
[34] See Wasser & Winters Co., 84 Wash.2d at 599, 528 P.2d 471.
[35] Olds-Olympic, 129 Wash.2d at 479, 918 P.2d 923 (citing Weyerhaeuser, 123 Wash.2d at 909, 874 P.2d 142).
[36] Olds-Olympic, 129 Wash.2d at 479, 918 P.2d 923 (citing Tod I. Zuckerman and Mark C. Raskoff, Environmental Insurance Litigation § 7.02, at 7-4 (Supp.1994)).
[37] 112 Md.App. 472, 685 A.2d 858 (1996).
[38] 140 N.H. 592, 669 A.2d 232 (1995).
[39] 124 Wash.2d 789, 810, 881 P.2d 1020 (1994).
[40] 77 Wash.2d 850, 859, 467 P.2d 847 (1970).
[41] State Farm makes this argument in its reply brief. State Farm did not argue for allocation on the record before the trial court. Also, State Farm initially argued that ECA's common ownership interest cannot be divided.