103 P.3d 240 (2004)
Melanie WHEELER, Appellant,
v.
ROCKY MOUNTAIN FIRE & CASUALTY COMPANY, Respondent.
No. 30893-2-II.
Court of Appeals of Washington, Division 2.
December 21, 2004.
As Amended December 28, 2004.
*241 Stephen Paul Rickles, The Rickles Law Firm, Portland, OR, for Respondent.
Duane Charles Crandall, Crandall Long & O'Neill, Longview, WA, for Appellant.
*242 HOUGHTON, P.J.
Melanie Wheeler appeals a trial court decision denying her accident coverage under her foster mother's automobile insurance policy. The trial court determined that Wheeler had reached the age of majority and, therefore, she no longer fit the definition of "foster child" set forth in the policy language. We agree that once Wheeler turned 18, the policy no longer covered her and, therefore, we affirm.

FACTS
Wheeler, a foster child, moved in with the Taylor family at the age of 16. She continued to live with them through her 18th birthday. Although the family discussed adoption, Wheeler's natural mother opposed the idea so the Taylors never sought adoption.
On August 1, 2002, Wheeler turned 18. Shortly before her 18th birthday, Wheeler purchased a Hyundai automobile for herself. Julie Taylor, Wheeler's foster mother, listed herself as the vehicle owner on the title and on August 4, 2002, added the car to the family's insurance policy. Although the family intended for Wheeler to be the only driver, Taylor did not add Wheeler's name to the policy. The policy provided coverage for "family members" including a "ward or foster child." Clerk's Papers (CP) at 46. The policy did not define either ward or foster child.
On August 8, Wheeler passed her driving examination and obtained a driver's license. The following day, August 9, Wheeler suffered severe injuries in a car accident while traveling as a passenger in a friend's car. Neither of the two drivers involved in the accident carried liability insurance.
Wheeler sought to recover for her injuries through the Taylors' uninsured motorist coverage. Rocky Mountain Fire & Casualty Company refused to cover Wheeler's injuries because she had turned 18 and no longer was a foster child under state law. The trial court granted Rocky Mountain's motion for summary judgment dismissing Wheeler's claims. Wheeler appeals.

ANALYSIS
Wheeler raises several assignments of error that she argues preclude summary judgment for Rocky Mountain. First, she argues that the policy's undefined terms "ward" and "foster child" are ambiguous and should be construed against the insurer. She asserts that the words have independent meaning and only her status as a ward ended on her 18th birthday, not her status as a foster child.
We interpret an insurance contract de novo. State Farm Fire & Cas. v. English Cove Ass'n, 121 Wash.App. 358, 362-63, 88 P.3d 986 (2004). We give a policy a fair, reasonable, and sensible construction taking into account the understanding of an average person purchasing the policy. English Cove, 121 Wash.App. at 363, 88 P.3d 986. We do not accord weight to one party's unexpressed intent as relevant to the parties' mutual intent. English Cove, 121 Wash.App. at 363, 88 P.3d 986.
When clear and unambiguous, we enforce the policy language as written. National Merit Ins. Co. v. Yost, 101 Wash.App. 236, 239, 3 P.3d 203, review denied, 142 Wash.2d 1011, 16 P.3d 1264 (2000). A term is ambiguous if it is fairly susceptible to two different but reasonable interpretations by an average insurance purchaser. English Cove, 121 Wash.App. at 363, 88 P.3d 986. We construe ambiguous insurance contract language in favor of the insured. Allstate Ins. Co. v. Peasley, 131 Wash.2d 420, 424, 932 P.2d 1244 (1997). When determining whether an ambiguity exists, we look to the policy language as it would be read by the average insurance purchaser. Allstate, 131 Wash.2d at 424, 932 P.2d 1244.
The Rocky Mountain policy defines neither foster child nor ward. Generally, we give undefined terms their plain, ordinary, and popular meaning as would be understood by the average insurance purchaser. Allstate, 131 Wash.2d at 424, 932 P.2d 1244 (citing State Farm Gen. Ins. Co. v. Emerson, 102 Wash.2d 477, 480, 687 P.2d 1139 (1984)). We may consult the dictionary to determine meaning. Allstate, 131 Wash.2d at 425-26, 932 P.2d 1244 (citing *243 Boeing Co. v. Aetna Cas. & Sur. Co., 113 Wash.2d 869, 877, 784 P.2d 507 (1990); Kish v. Ins. Co. of N. Am., 125 Wash.2d 164, 171, 883 P.2d 308 (1994)). Next, we look to the words and phrases in the policy surrounding the undefined terms to guide us as to their meaning. Matthews v. Penn-America Ins. Co., 106 Wash.App. 745, 751, 25 P.3d 451 (2001), review denied, 145 Wash.2d 1019, 41 P.3d 485 (2002). We consider the limiting effect of Rocky Mountain's use of both "ward" and "foster child." Matthews, 106 Wash.App. at 751, 25 P.3d 451.
The term "ward" means "[a] person, usu[ally] a minor, who is under a guardian's charge or protection." BLACK'S LAW DICTIONARY 1614 (8th ed.2004). This leads us to the definition of "minor," which reads, "not having reached the age of majority." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1439 (1976). RCW 26.28.010 states, "all persons shall be deemed and taken to be of full age for all purposes at the age of eighteen years." "Ward" is not susceptible to multiple meanings. When Wheeler turned 18, she no longer fit the definition of ward.[1]
Black's Law Dictionary, supra, at 255, defines "foster child" as "[a] child whose care and upbringing are entrusted to an adult other than the child's natural or adoptive parents." This definition does not expressly state when the foster relationship ends. But it does use the word "child," which indicates expiration on Wheeler's emancipation. Emancipation occurs at the age of 18. See, e.g., Main v. Main, 38 Wash.App. 351, 352-53, 684 P.2d 1381 (1984). Furthermore, chapter 74.13 RCW, which governs foster care in Washington State, provides: "As used in this chapter, child means a person less than eighteen years of age." RCW 74.13.020(5). And the Division of Children and Family Services terminated Wheeler's foster care placement with the Taylors on Wheeler's 18th birthday. Thus, a reasonable meaning for a foster child means a child under the age of 18. The term is not susceptible to multiple meanings. Once Wheeler turned 18, she no longer fit under the terms of the policy.
The words do have independent meaning within the context of the policy. Through the dictionary definitions, it is reasonable to interpret a ward as a child under someone else's guardianship. This could include the State or a foster family. The term "foster child," however, is more specific and indicates a familial relationship. But with both terms, the relationship ends at the child's 18th birthday.
Accordingly, Wheeler did not qualify for uninsured motorist coverage under the Taylors' insurance policy.[2]
Wheeler further contends that she should be covered because Rocky Mountain failed to deliver the policy to Taylor until 18 days after the accident. In support of her argument, Wheeler cites State Farm General Insurance Company v. Emerson, 102 Wash.2d 477, 687 P.2d 1139 (1984), a case where the insurance company assured the insured that she had full coverage, but she did not. Here, no one represented that Rocky Mountain covered Wheeler and Emerson does not apply.
Wheeler also argues that RCW 48.18.260 requires "every policy... be delivered to the insured or to the person entitled thereto within a reasonable period of time after its issuance." Nothing here indicates that 18 days is not a "reasonable amount of time" for purposes of RCW 48.18.260. Wheeler's argument fails.
Wheeler finally contends that "public policy militates toward coverage." Appellant's Brief at 20. She cites Tissell v. Liberty Mutual Insurance Company, 115 Wash.2d 107, 114, 795 P.2d 126 (1990), for the proposition that "`family member exclusions' clauses have been held invalidated because they deny coverage based on the class of the victim rather than the factors related to the insurer's risk." Appellant's Br. at 22. Although true, the insurance clause at issue here is not of the type contemplated in Tissell. 115 *244 Wash.2d at 112-14, 795 P.2d 126. The Tissell court noted "an exclusion may be justified where an insurer's risk is affected by the nature of the persons or conduct excluded  such as when an unauthorized driver takes the wheel. However, where the exclusion is aimed at a certain type of victim, the justification does not apply." 115 Wash.2d at 113, 795 P.2d 126.
Here, Wheeler was the accident victim, but more importantly, she is claiming that she was the insured. As our Supreme Court explained in Tissell, an insurance company may exclude persons from their status as "insured." 115 Wash.2d at 113, 795 P.2d 126. The Tissell decision held that once an insurance company has decided to insure a driver, it cannot deny coverage based on the identity of a victim injured by its insured driver. 115 Wash.2d at 113, 795 P.2d 126. Tissell does not apply here.[3]
Affirmed.
We concur: BRIDGEWATER and ARMSTRONG, JJ.
NOTES
[1] We can envision situations in which a person beyond the age of majority remains a ward, such as a severely disabled individual.
[2] Wheeler raises other arguments based on policy ambiguity. Because we hold the policy is not ambiguous, we do not address these issues.
[3] Further, Matthews involved almost identical policy language. There, we held that "nothing in law or in the public policy of this state ... that would automatically make all resident members of [one's] family also members of [another's] family for insurance coverage purposes." Matthews, 106 Wash.App. at 756, 25 P.3d 451 (Seinfeld, J., concurring). Similarly, here no public policy invalidated the clause excluding nonfamily members from coverage. The question, as stated above, turns on whether the exclusionary clause excludes Wheeler.